## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| IN RE: | § | CHAPTER 11 |
| | § | |
| ALEXANDER E. JONES | § | CASE NO. 22-33553 (CML) |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| ----------------------------------------------------------- | § | |
| DAVID WHEELER, FRANCINE | § | |
| WHEELER, JACQUELINE BARDEN, | § | Adv. Proc. No. 23-3037 |
| MARK BARDEN, NICOLE HOCKLEY, IAN | § | |
| HOCKLEY, JENNIFER HENSEL, DONNA | § | |
| SOTO, CARLEE SOTO-PARISI, CARLOS | § | |
| M. SOTO, JILLIAN SOTO MARINO, | § | |
| WILLIAM ALDENBERG, WILLIAM | § | |
| SHERLACH, ROBERT PARKER, AND | § | |
| RICHARD M. COAN, as chapter 7 trustee | § | |
| for the estate of ERICA LAFFERTY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| ALEXANDER E. JONES | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

## MOTION FOR LEAVE TO APPEAL ORDER ON CONNECTICUT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................2

QUESTION PRESENTED .......................................................................................5

RELIEF REQUESTED ............................................................................................6

ARGUMENT ...........................................................................................................6

I.     There is a Controlling Question of Law ........................................................7

II.    There are Substantial Grounds for Difference of Opinion ...........................9

       A. Necessarily Determined ........................................................................10

           1.   Defamation and IIED ......................................................................10

           2.   CUTPA ............................................................................................20

       B. Actually Litigated .................................................................................22

       C. Fairness Factors and Constitutionality .................................................23

III.   An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation ..............................................................................................24

CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari v. Daoud & Partners*,
   No. 09-cv-1237, 2012 WL 718933 (S.D. Tex. Mar. 5, 2012) ................................................24

*Advanced Fin. Servs., Inc. v. Associated Appraisal Servs., Inc.*,
   830 A.2d 240 (Conn. App. 2003) .......................................................................................20

*Antrican v. Odom*,
   290 F.3d 178 (4th Cir. 2002) .............................................................................................22

*B.B. v. Bradley (In re Bradley)*,
   466 B.R. 582 (B.A.P. 1st Cir. 2012) .................................................................................17

*Birnie v. Elec. Boat Corp.*,
   953 A.2d 28 (Conn. 2008) .................................................................................................20

*Bolmer v. Oliveira*,
   594 F.3d 134 (2d Cir. 2010) ..............................................................................................21

*Bradburn Parent Tchr. Store, Inc. v. 3M*,
   No. CIV.A.02-7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005) ...............................7

*Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*,
   702 F.2d 67 (5th Cir. 1983) ...............................................................................................25

*Coates v. Brazoria Cnty. Tex.*,
   919 F. Supp. 2d 863 (S.D. Tex. 2013) ...............................................................................25

*In re Coudert Bros. LLP Law Firm Adversary Proceedings*,
   447 B.R. 706 (S.D.N.Y. 2011) .......................................................................................1, 3

*Cumberland Farms, Inc. v. Town of Groton*,
   808 A.2d 1107 (Conn. 2002) .............................................................................................23

*Donohue v. Shop-Rite Supermarkets*,
   No. CV146041233S, 2014 WL 5094294 (Conn. Super. Ct. Aug. 28, 2014) ...................15, 18

*Doughty v. Hill (In re Hill)*,
   265 B.R. 270 (Bankr. M.D. Fla. 2001) ..............................................................................17

*Efthimiou v. Smith*,
   846 A.2d 222 (Conn. 2004) ...............................................................................................10

*Matter of First Financial Development Corp.*,
    960 F.2d 23 (5th Cir. 1992) ...........................................................................7

*First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*,
    470 B.R. 364 (E.D. Va. 2012).........................................................................1

*Gambardella v. Apple Health Care*,
    Inc., 969 A.2d 736, 744 (Conn. 2009) ...........................................................11

*Gilbert v. Dang (In re Dang)*,
    560 B.R. 287 (S.D. Tex. 2016) ................................................................10, 17

*Gladysz v. Plan. & Zoning Comm'n of Town of Plainville*,
    773 A.2d 300 (Conn. 2001) .......................................................................21, 22

*In re Global Marine, Inc.*,
    108 B.R. 1007 (S.D. Tex. 1988) .....................................................................7

*Gober v. Terra*
    + *Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996)....................................9

*Grogan v. Garner*,
    498 U.S. 279 (1991).....................................................................................9

*Heslin v. Jones (In re Jones)*,
    No. 22-33553, 2023 WL 6938266 (Bankr. S.D. Tex. Oct. 19, 2023) (Texas Adv. Doc.
    46) .......................................................................................................19

*Hidden Cove Park & Marina v. Lexington Ins. Co.*,
    No. 17-cv-193, 2018 WL 501079 (E.D. Tex. Jan. 22, 2018) .................................7

*Matter of Hoffman*,
    955 F.3d 440 (5th Cir. 2020) .........................................................................9

*Matter of Ichinose*,
    946 F.2d 1169 (5th Cir. 1991) .......................................................................7

*Independent Party of CT-State Central v. Merrill*,
    200 A.3d 1118 (Conn. 2019) ........................................................................22

*Irvin v. Faller (In re Faller)*,
    547 B.R. 766 (Bankr. W.D. Ky. 2016) ..........................................................12

*Jefferson v. Holland (In re Holland)*,
    428 B.R. 465 (Bankr. N.D. Ill. 2010) ............................................................13

*In re Kauanui*,
    No. 14-00077, 2015 WL 359088 (Bankr. D. Haw. Jan. 23, 2015)..........................18

*Kawaauhau v. Geiger*,
    523 U.S. 57 (1998)...................................................................................9, 11, 16

*King v. Huizar (In re Huizar)*,
    609 B.R. 482 (Bankr. W.D. Tex. 2019)........................................................22

*Kremer v. Chem. Const. Corp.*,
    456 U.S. 461 (1982)......................................................................................24

*Lafferty, et al. v. Jones, et al.*,
    UWY-CV-18-6046436-S .................................................................................2

*Langan v. Evers (In re Evers)*,
    212 B.R. 945 (Bankr. E.D. Wis. 1997)........................................................12

*Laurel Beach Ass'n v. Zoning Bd. of Appeals of City of Milford*,
    785 A.2d 1169 (Conn. App. 2001) ...........................................................10, 21

*Mahadevan v. Bikkina (In re Mahadevan)*,
    617 F. Supp. 3d 654 (S.D. Tex. 2022) ........................................12, 14, 15, 17, 18

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) .......................................................................22

*Merritt v. Rizzo (In re Rizzo)*,
    337 B.R. 180 (Bankr. N.D. Ill. 2006) .........................................................12

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md.2003).................................................................8

*Miller v. J.D. Abrams, Inc. (In re Miller)*,
    156 F.3d 598 (5th Cir. 1998) .........................................................................9

*Moore v. City of Wynnewood*,
    57 F.3d 924 (10th Cir. 1995) .......................................................................22

*Moye v. Cage*,
    2011 WL 3444221 (S.D. Tex. Aug. 8, 2011) ...............................................7

*O'Gara v. Hunter (In re Hunter)*,
    610 B.R. 479 (Bankr. M.D.N.C. 2019)........................................................12

*Pemex Exploration y Produccion v. BASF Corp.*,
    No. CIV.A. H-10-1997, 2011 WL 11569219 (S.D. Tex. Feb. 11, 2011) ...............24

*Purser v. Scarbrough (In re Scarbrough)*,
    516 B.R. 897 (Bankr. W.D. Tex. 2014).....................................................13, 14

iv

*Raspanti v. Keaty (In re Keaty)*,
    397 F.3d 264 (5th Cir. 2005) ...................................................................................9

*Roderick Timber Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995)....................................1

*Rodriguez v. City of Corpus Christi*,
    No. 2:21-CV-00297, 2023 WL 6371029 (S.D. Tex. June 10, 2023)........................8

*In re Royce Homes LP*,
    466 B.R. 81 (S.D. Tex. 2012) .................................................................................1

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006) ...................................................................8

*Scarbrough v. Purser (In re Scarbrough)*,
    836 F.3d 447 (5th Cir. 2016) ................................................................................13

*Sherlach, et al. v. Jones, et al.*,
    UWY-CV-18-6046438-S (collectively, the "State Court Case") ............................2

*Suboh v. District Attorney's Office of Suffolk Dist.*,
    298 F.3d 81 (1st Cir. 2002)...................................................................................22

*Swint v. Chambers County Comm'n*,
    514 U.S. 35 (1995).................................................................................................21

*In re Taranto*,
    365 B.R. 85 (B.A.P. 6th Cir. 2007)..........................................................................1

*Tesco Corp. v. Weatherford Intern., Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) ...............................................................7, 24

*Thompson v. Durrance (In re Durrance)*,
    84 B.R. 238 (Bankr. M.D. Fla. 1988) ....................................................................12

*In re Tile Outlet, Inc.*,
    2006 WL 17116125 (S.D. Tex. June 16, 2006) .......................................................7

*Total E&P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*,
    No. CV H-16-2671, 2018 WL 11469624 (S.D. Tex. Nov. 6, 2018) ........................7

*Ulbrich v. Groth*,
    78 A.3d 76 (Conn. 2013) .......................................................................................20

*Wheeler v. Laudani*,
    783 F.2d 610 (6th Cir. 1986) ............................................................................11, 12

*Witowski v. Welch*,
    173 F.3d 192 (3d Cir. 1999)....................................................................................8

**Codes**

United States Code title 28 Section 158(a) ..................................................6

Bankruptcy Code Chapter 11 .................................................................2, 3

Bankruptcy Code § 523(a) ........................................................................3

Bankruptcy Code §§ 1007 and 1008 ..........................................................3

**Statutes**

11 U.S.C. § 523(a)(6) ..................4, 5, 6, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25

28 U.S.C. § 157 .......................................................................................6

28 U.S.C. § 158(a)(3) ............................................................................1, 6

28 U.S.C. § 1292 .....................................................................................6

28 U.S.C. § 1292(b) .............................................................................1, 7

28 U.S.C. § 1738 ...............................................................................21, 24

**Other Authorities**

First Amendment ...................................................................................2, 4

Bankruptcy Rule 8004 ..........................................................................1, 6

Free Speech Clause .................................................................................2

Pursuant to 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8004, Debtor Alexander E. Jones ("Debtor") hereby respectfully moves this Court for leave to appeal *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment Against Jones* (the "Connecticut Order") (Doc. 76), which is an interlocutory order entered by the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), a copy of which is attached hereto as **<u>Exhibit A</u>**.

## PRELIMINARY STATEMENT

Debtor asks this Court for leave to appeal the Connecticut Order pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3), which confers district courts with appellate jurisdiction over interlocutory orders with leave of the district court. While 28 U.S.C. § 158(a)(3) specifies no criteria for granting such leave, courts often look to the prerequisites set forth in 28 U.S.C. § 1292(b) to determine whether to allow an interlocutory appeal. Under 28 U.S.C. § 1292(b), leave to appeal should be granted when the order involves (1) a question of law that is controlling; (2) as to which there is a substantial ground for difference of opinion; and (3) an immediate appeal of which would materially advance the ultimate termination of the litigation. *See In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012); *see also DaimierChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 87 (B.A.P. 6th Cir. 2007); *Roderick v. Levy (In re Roderick Timber Co.)*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995); *First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*, 470 B.R. 364, 371 (E.D. Va. 2012); *In re Coudert Bros. LLP Law Firm Adversary Proceedings*, 447 B.R. 706, 711 (S.D.N.Y. 2011). For the reasons set forth below, all factors are present here, and the Court should grant Debtor leave to appeal the Connecticut Order.

## FACTUAL BACKGROUND

1.      On December 2, 2022 ("Petition Date"), Debtor commenced a voluntary case under Chapter 11 of the Bankruptcy Code. (Bankruptcy Doc. 1).[1]

2.      The portion of the debt relevant to this Motion comes from the judgment of consolidated cases in Connecticut Superior Court,[2] related to statements Debtor made on his radio show questioning the veracity of the 2013 Sandy Hook Elementary School shooting.

3.      In May and December 2018, David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, Jillian Soto Marino, William Aldenberg, William Sherlach, Robert Parker, and Erica Lafferty (collectively, "Plaintiffs") sued Debtor. At all times, Debtor maintained that his statements were protected from tort liability by the Free Speech Clause of the First Amendment, targeted at the certain factions of the government and mainstream media, and were not intended to harm any individual.

4.      On November 15, 2021, the state court entered a default judgment against Debtor based on discovery violations for failing to produce certain web-traffic analytics (the "Default Judgment"). The court then set the matter for a damages hearing, since liability had already been determined by the default judgment. At the hearing, Debtor was forbidden from testifying on, among other things, his lack of intent to cause harm to Plaintiffs.

5.      On October 12, 2022, the jury reached a verdict regarding compensatory damages for the claims of defamation, intentional infliction of emotional distress ("IIED"), invasion of privacy by false

---

[1] All docket references herein shall be to Adversary Proceeding No. 23-3037 unless otherwise specified. References to "Bankruptcy Doc." refer to Debtor's Chapter 11 Case No. 22-33553, and references to "Texas Adv. Doc." refers to Debtor's other adversary proceeding Case No. 23-3035.

[2] *Lafferty, et al. v. Jones, et al.*, UWY-CV-18-6046436-S, *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046437-S, and *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046438-S (collectively, the "State Court Case").

2

light, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") in favor of Plaintiffs and against the Debtor in the amount of $965 million (the "Compensatory Damages Verdict"). The jury also found that Plaintiffs were entitled to common law punitive damages, which in Connecticut consist of attorney's fees and costs. The amount of common-law punitive damages and punitive damages under CUPTA were to be determined by the court at a later date.

6.      On November 10, 2022, the Connecticut court issued a memorandum opinion ordering punitive damages in favor of Plaintiffs and against Debtor (the "Punitive Damages Order"). The Court awarded Plaintiffs $321 million for common-law punitive damages and $150 million for CUTPA punitive damages.

7.      Debtor continues in possession of his holdings and is managing as a debtor-in-possession pursuant to Bankruptcy Code §§ 1007 and 1008.

8.      Information regarding Debtor's background and assets, liabilities, schedules, and plan, and the events leading up to the commencement of this Chapter 11 case can be found in Debtor's Initial Status Report. (Bankruptcy Doc. 21). Debtor respectfully refers the Court to the factual background set forth in Debtor's *Defendant's Objection and Response to Movants' Motion for Summary Judgment* (Doc. 61) and *Defendant's Objections and Responses to Movants' Statement of Uncontested Material Facts and Summary Judgment Evidence* (Doc. 62) to Plaintiffs' *Statement of Uncontested Material Facts in Support of Plaintiffs' Motion for Summary Judgment* (Doc. 57-1), which he incorporates fully herein by reference. The following includes only the background necessary to highlight the need for the relief requested in the Motion.

9.      On March 10, 2023, Plaintiffs[3] filed their *Adversary Complaint Seeking Judgment that Sandy Hook Judgment is Non-Dischargeable under Bankruptcy Code § 523(a)* (the "Complaint") (Doc. 1) in this adversary proceeding with the Bankruptcy Court seeking a declaration that Debtor's debts to Plaintiffs were nondischargeable.

10.     On May 5, 2023, Debtor filed his *Defendant Alexander E. Jones's Original Answer to Plaintiffs' Complaint* (Doc. 56) with the Bankruptcy Court in response to Plaintiffs' Complaint.

11.     On May 12, 2023, Plaintiffs filed their *Plaintiffs' Motion for Summary Judgment* (Doc. 57-59) and their *Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment* (Doc. 60) (collectively, "Plaintiffs' MSJ") with the Bankruptcy Court seeking summary judgment on the dischargeability issue. Plaintiffs argued that Debtor was collaterally estopped from arguing that his debt to Plaintiffs was not willful and malicious injury under 11 U.S.C. § 523(a)(6) and that the record from the underlying Connecticut state court action confirmed that the judgment arises from Debtor's willful and malicious injury.

12.     On June 13, 2023, Debtor filed his *Defendant's Objection and Response to Movants' Motion for Summary Judgment* (Doc. 61) and his *Defendant's Objections and Responses to Movants' Statement of Uncontested Material Facts and Summary Judgment Evidence* (Doc. 62) with the Bankruptcy Court, arguing (among other things) that collateral estoppel did not apply under Connecticut law or under the First Amendment.

13.     On July 14, 2023, Plaintiffs filed their *Reply Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment* (Doc. 66) with the Bankruptcy Court.

---

[3] Richard M. Coan joined Plaintiffs as chapter 7 trustee for the estate of Erica Lafferty. The collectively defined "Plaintiffs" will be used for both the plaintiffs group that sued Debtor in the State Court Case and in this above-captioned matter.

14.     On August 15, 2023, the Bankruptcy Court held a hearing on the Plaintiffs' MSJ and a similar summary judgment motion in the Texas adversary proceeding, and heard argument presented by all parties.

15.     On October 19, 2023, the Bankruptcy Court issued the Connecticut Order. The Bankruptcy Court granted summary judgment on the **$965 million** debt for compensatory damages awarded in the underlying Connecticut action for defamation and IIED. Furthermore, it granted summary judgment on the **$150 million** debt for punitive damages under CUTPA. However, summary judgment was denied as to the **$321.65 million** in attorneys' fees and **$1,489,555.94** in costs awarded as common law punitive damages. All other objections raised by Debtor that were not specifically addressed in the Connecticut Order were considered to be denied.

16.     Contemporaneously herewith, Debtor files his notice of appeal from the Connecticut Order, accompanied by this *Motion for Leave to Appeal Order on Connecticut Plaintiffs' Motion for Summary Judgment* (the "Motion").

## QUESTIONS PRESENTED

17.     The question presented in this case is presented as one question with three sub-questions. As to the broad question, Debtor asks the Court:

1.  Do default judgments for defamation and IIED in Connecticut state court or the imposition of punitive damages under Connecticut's consumer protection law preclude litigation on nondischargeability of those judgments in bankruptcy under 11 U.S.C. § 523(a)(6) under the doctrine of collateral estoppel?

18.     As to the narrower sub-questions that are encompassed by the broader question, Debtor submits as follows:

a)  Under the applicable state law, an issue must be "necessarily determined" by the first court for collateral estoppel to apply, which means that the judgment could not have been validly rendered without deciding the issue. Here, the issue of "willful and malicious injury" under § 523(a)(6) was not necessary to the judgment because the disjunctive jury instruction for both defamation and IIED allowed for valid judgments based on a lesser standard than that required

5

for nondischargeability under § 523(a)(6). The same is true for the standards governing the award of punitive damages under Connecticut consumer protection laws. Did the Bankruptcy Court err in determining that the § 523(a)(6) issue was "necessarily determined" here?

b) Likewise, the issue must be "actually litigated." Generally, a default judgment is not enough to meet this requirement for collateral estoppel, but there are exceptions in some circumstances. In a § 523(a)(6) adversarial proceeding, one such circumstance is when the first court conducts a hearing equivalent to a hearing on § 523(a)(6). Here, there is no equivalency because Debtor was expressly forbidden from testifying on anything related to § 523(a)(6)—that is, intent to cause harm—at a damages hearing following the default judgment. Did the Bankruptcy Court err in determining that the § 523(a)(6) issue was "actually litigated" here?

c) Both state and federal collateral estoppel law require a court to assess the constitutionality of the judgment at issue even though the same consideration might also be issues on an appeal of the judgment rendered in the first court. Here, the Bankruptcy Court did not assess the constitutionality of the judgment. Did the Bankruptcy Court err in doing so?

**RELIEF REQUESTED**

19. By this Motion, Debtor respectfully requests that the court grant leave to appeal the Connecticut Order. As set forth herein, Debtor has satisfied the requirements for interlocutory review of the Connecticut Order and the reversal of the Connecticut Order would materially hasten termination of the instant case. For these reasons, and the reasons set forth more fully below, Debtor seeks entry of an order pursuant to Bankruptcy Rule 8004 and 28 U.S.C. § 158(a)(3) granting leave to appeal Connecticut Order.

**ARGUMENT**

20. Section 158(a) of title 28 of the United States Code grants United States District Courts jurisdiction to hear appeals from interlocutory orders issued by a Bankruptcy Court at their discretion. 28 U.S.C. § 158(a)(3) (noting that a District Court shall have jurisdiction to hear appeals "from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under" 28 U.S.C. § 157 (internal citation omitted)). Although Section 158(a) is silent on the question of how this discretion is to be exercised, courts look to the factors set forth in 28 U.S.C. § 1292, which define the scope of appellate jurisdiction over interlocutory appeals from the district courts.

6

21.     Leave to appeal is an exercise of judicial discretion dependent on the circumstances of the case. When deciding whether to grant leave to appeal under Bankruptcy Rule 8004, courts consider factors which include whether: (1) the appeal involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1177 (5th Cir. 1991); *In re First Fin. Dev. Corp.*, 960 F.2d 23, 25 (5th Cir. 1992); *In re Global Marine, Inc.*, 108 B.R. 1007, 1009 (S.D. Tex. 1988); *Moye v. Cage*, No. H-10-4531, 2011 WL 3444221, at *3-4 (S.D. Tex. Aug. 8, 2011); *In re Tile Outlet, Inc.*, No. 05-80340, 2006 WL 1716125, at *6-7 (S.D. Tex. June 16, 2006).

22.     Because each of these factors weighs in favor of leave to appeal, this Court should grant Debtor's Motion for leave to appeal the Connecticut Order.

## I.     There Is a Controlling Question of Law

23.     To constitute a controlling issue of law, an issue does not need to be outcome determinative. *Tesco Corp. v. Weatherford Intern., Inc.*, 722 F. Supp. 2d 755, 765-66 (S.D. Tex. 2010) Rather, the determination "hinges upon its potential to have some impact on the course of the litigation." *Id*. at 766. Moreover, "[a] ruling turns on a controlling question of law for purposes of an interlocutory appeal under § 1292(b) only if it involves 'a pure issue of law, *i.e.*, a question the appellate court can efficiently rule on without making an intensive inquiry into the record.'" *Total E & P USA, Inc. v. Marubeni Oil & Gas USA, Inc.*, No. H-16-2671, 2018 WL 11469624, at *2 (S.D. Tex. Nov. 6, 2018) (quoting *Hidden Cove Park & Marina v. Lexington Ins. Co.*, No. 4:17-CV-193, 2018 WL 501079, *1 (E.D. Tex. Jan. 22, 2018)).

24.     In this appeal, the straightforward question of law presented is whether collateral estoppel, or issue preclusion, preclude litigation on nondischargeability under 11 U.S.C. § 523(a)(6) due to default judgments on defamation and IIED in Connecticut state court.

25.     Many courts have found that an order based on offensive collateral estoppel is a question of law that controls many aspects of the proceedings in substantial respects. *Bradburn Parent Tchr. Store, Inc. v. 3M*, No. CIV.A.02-7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005) ("There can be little doubt that the Court's June 9, 2005 Order applying offensive collateral estoppel to certain facts established in *LePage's* was a ruling on an issue of law."); *see also Witowski v. Welch*, 173 F.3d 192, 197 (3d Cir. 1999) (in reviewing collateral estoppel order, question is whether district court correctly applied the law to determine that certain matters were barred); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003) (certifying court's order applying collateral estoppel to preclude relitigation of certain issues in antitrust action for interlocutory appeal).

26.     Here is no exception. The only question Debtor asks the Court to review is whether the Bankruptcy Court properly applied the doctrine of collateral estoppel under Connecticut law. This is purely a question of law. Debtor does not dispute the facts relied on by the Bankruptcy Court, and the Court here does not have to make any credibility determinations or review any issues of fact determined by the Bankruptcy Court or an extensive record. Rather, the Court just needs to look at a few documents in the state-court record, like, for instance, the petition, the Default Judgment, the jury instructions, the Punitive Damages Order, and the Final Judgment to determine whether collateral estoppel applies. Moreover, this question materially affects the litigation's outcome because the application of the doctrine of collateral estoppel under Connecticut law was the only issue decided by the Bankruptcy Court, and its determination is the central question of the adversary proceeding.

## II.     There Are Substantial Grounds for Differences of Opinion

27.     A substantial ground for difference of opinion exists where "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Rodriguez v. City of Corpus Christi*, No. 2:21-CV-00297, 2023 WL 6371029, at *2 (S.D. Tex. June 10, 2023) (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723-24 (N.D. Tex. 2006)).

28.     A brief summary of the relevant law is in order here. The Bankruptcy Code exempts damages from an injury caused willfully and maliciously by a debtor with the intent to cause such injury to another person or their property from discharge. 11 U.S.C. § 523(a)(6). The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), settled a split among the circuits and clarified the scope of the willful and malicious injury exception to dischargeability in § 523(a)(6). The Court noted that the word "willful" modifies the word "injury," and that nondischargeability takes a deliberate or intentional injury rather than a deliberate or intentional act that leads to injury. *Id.* With this formulation, the Court instructed litigants and courts to think of intentional torts (which generally require that the actor intend the consequences of an act, not simply the act itself) and ultimately held that debts arising from recklessly inflicted injuries do not fall within the compass of § 523(a)(6). *Id.* at 61-62.

29.     In the Fifth Circuit, a "willful and malicious injury" requires finding an "objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). "To prevail under § 523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005).

9

30.     As is relevant here, "[p]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains exclusive jurisdiction to ultimately determine the dischargeability of the debt." *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)). In determining whether to give preclusive effect to a state court judgment, courts "apply the preclusion rules of the state that rendered the judgment. *Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020). In Connecticut, for collateral estoppel to apply, the issue must have been "actually litigated" and "necessarily determined" in the first case. *Efthimiou v. Smith*, 846 A.2d 222, 227 (Conn. 2004). Debtor will address the "necessarily determined" prong first.

### A.  Necessarily Determined

#### 1.  Defamation and IIED

31.     The most obvious example of the substantial-ground-for-a-difference-of-opinion element being satisfied comes in the Bankruptcy Court's reasoning on whether the Connecticut Judgment "necessarily determined" the "willful and malicious injury" issue under § 523(a)(6) as it relates to the jury's finding of compensatory damages for defamation and IIED, which totaled $965 million.

32.     For collateral estoppel to apply here, the Bankruptcy Court must have specifically determined that the issue of "willful and malicious injury" under § 523(a)(6) as defined by the Fifth Circuit was inherent in the Connecticut Judgment and thus necessary for both IIED and defamation. *Laurel Beach Ass'n v. Zoning Bd. of Appeals of City of Milford*, 785 A.2d 1169, 1176 (Conn. App. 2001).

33.     In the section discussing the necessarily determined prong of collateral estoppel, the Bankruptcy Court relied on the jury instructions to conclude that "there are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims." (Doc. 76 at 14). However, while the Bankruptcy Court

10

was correct to rely on the jury instructions for its analysis, the instructions themselves are disjunctive and allowed the jury to base its verdict on reckless conduct. Importantly, "[d]isjunctive jury instructions in state-court judgments make it difficult for a bankruptcy court to give preclusive effect to that judgment in deciding whether the judgment debt is nondischargeable." *See Gilbert v. Dang (In re Dang)*, 560 B.R. 287, 293 (S.D. Tex. 2016).

34.     As to defamation, the Bankruptcy Court relied on the following passage: "the defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large." (Doc. 76) (quoting Jury Instructions, Doc. 57-21). Importantly, the jury instructions on defamation did not include a level of culpability, and under Connecticut law, the most stringent standard available for a claim of defamation is "actual malice," which can be met with mere recklessness as to the veracity of the statement. *Gambardella v. Apple Health Care*, Inc., 969 A.2d 736, 744 (Conn. 2009). Thus, based on the record before the Bankruptcy Court, it is impossible to determine whether the jury awarded damages for defamation based on intentional or reckless conduct. This is dispositive, as section 523(a)(6) does not discharge debts arising from negligently or recklessly inflicted injuries. *Kawaauhau*, 523 U.S. at 59.

35.     This situation arose in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir. 1986), where a state court jury found the defendant liable for defamation pursuant to a general verdict. Because the plaintiff was a public figure, the jury was required to find actual malice. *Id.* at 615. The bankruptcy court granted the plaintiff's motion for summary judgment, reasoning that "[l]ibel is an intentional tort based upon a willful and malicious injury . . . . It suffices that this court finds that the verdict [in the state-court action], finding Defendant liable for defamation, encompassed within it a finding that Defendant-Debtor willfully and maliciously injured Plaintiffs." *Id.* at 614 (alterations and ellipses in original). The Sixth Circuit reversed the granting of summary judgment in favor of the plaintiff, reasoning that "a libel verdict may

be based on reckless conduct," but "***mere reckless disregard for the truth or falsity of the statement . . . is not a willful and malicious injury*** for purposes of § 523(a)(6)." (emphasis added). The *Wheeler* court further reasoned that "[b]ecause the jury's verdict was general, it is impossible on the current state of the record to divine whether the jury verdict rested on a finding that [defendant] acted knowingly or merely recklessly." *Id.* at 615. The court concluded by stating that "neither the pleadings nor the general verdict reflects that the issue of willfulness and maliciousness was actually litigated and necessary to the verdict. Thus, based on the record at hand, collateral estoppel would not operate to bar relitigation of this issue." *Id.*

36.     While the Fifth Circuit has not opined on this particular issue, other courts have followed the guidance of the *Wheeler* Court:

> Although the Plaintiff pled intentional defamation in the state court proceeding, the default judgment does not necessarily imply a finding of "willful and malicious" conduct on the part of the Debtor due to the fact that the Plaintiff's Complaint alleged that the statements were made either "with knowledge ... or reckless disregard for the truth." Clearly, reckless acts are insufficient to satisfy § 523(a)(6). *Wheeler, supra.* Further, there was no actual litigation regarding the Debtor's knowledge of the falsity of any statements made by her concerning the Plaintiff. Based on the state court records, this Court is satisfied that collateral estoppel principles should not prevent this Court from considering whether the Debtor's conduct was "willful and malicious" as defined by § 523(a)(6) of the Bankruptcy Code.

*Thompson v. Durrance (In re Durrance)*, 84 B.R. 238, 239-40 (Bankr. M.D. Fla. 1988); ***see also*** *Mahadevan v. Bikkina (In re Mahadevan)*, 617 F. Supp. 3d 654, 664 (S.D. Tex. 2022) (holding willful and malicious conduct was not necessarily decided by state-court judgment for defamation when the "jury was not asked to decide whether [the defendant] knew that the statements were false, but spread them anyway, knowing they would harm [the plaintiff]"); *Irvin v. Faller (In re Faller)*, 547 B.R. 766, 771 (Bankr. W.D. Ky. 2016) (holding collateral estoppel did not apply where state court verdict found the defendant liable for defamation per se because the defendant's conduct was potentially reckless, which does not satisfy § 523(a)(6)); *Langan v. Evers (In re Evers)*, 212 B.R. 945, 949 (Bankr. E.D. Wis. 1997)

("Reckless disregard may be sufficient to establish libel but it is not sufficient to establish maliciousness under § 523(a)(6)."); *O'Gara v. Hunter (In re Hunter)*, 610 B.R. 479, 509 (Bankr. M.D.N.C. 2019) ("Plaintiffs plausibly pleaded actual malice under California law, but actual malice is a broader scienter requirement than that found in willful and malicious under § 523(a)(6)."); *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 189 (Bankr. N.D. Ill. 2006) (stating "defamatory statement is not 'malicious' unless the debtor knew the statement was false when he made it"); *Jefferson v. Holland (In re Holland)*, 428 B.R. 465, 474 (Bankr. N.D. Ill. 2010) (same).

37.     The Bankruptcy Court did not discuss any of these cases and instead relied on *Purser v. Scarbrough (In re Scarbrough)*, 516 B.R. 897, 912-13 (Bankr. W.D. Tex. 2014). In *Scarborough*, the court applied the doctrine of collateral estoppel and concluded that a state-court defamation judgment was nondischargeable under § 523(a)(6). *Id.* The Bankruptcy Court here relied heavily on the fact that the defamation jury instruction in *Scarbrough* stated that the debtor made statements he "knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)." (Doc. 76 (quoting *Scarbrough*, 516 B.R. at 912)). The Bankruptcy Court noted that the "instruction mirrors the defamation instruction in this case." *Id.* The Bankruptcy Court further noted that the Fifth Circuit later affirmed that holding. *See Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447, 456 (5th Cir. 2016).

38.     But *Scarbrough* and its subsequent affirmance by the Fifth Circuit does not support the Bankruptcy Court's reasoning. In *Scarbrough*, the defendant—who was an attorney—was sued in state court for defamation because he had disseminated false allegations that the plaintiffs' family members had abused and murdered their elderly father. *Id.* at 909. The reason for the false accusations was because, at the time he made the defamatory statements, the defendant was representing a woman who had received monetary gifts from the father and who had been sued by the family members for fraud. *Id.* at 904. The

13

defendant had a full trial on the merits in state court and was found liable for defamation and fraud. *Id.* at 909. The defendant filed for bankruptcy, the plaintiff brought an adversary claim for nondischargeability, and after a trial on the merits in front of the bankruptcy court, the court held the debt non-dischargeable. *Id.* at 912. The court found that the defendant made his allegations as a strategic maneuver to delay burial of the father in an effort to obtain an autopsy to show that the father had not been suffering from dementia. The court further found that the attorney knew his statements were false. *Id.* The *Scarbrough* court concluded, with the luxury of two full records from the merits trial below and its own trial to conclude that the defendant's "subjective motive in posting the videos was to damage [the plaintiff's] reputation and candidacy for the school board elections, and to needlessly harass her in connection with the Bell County lawsuit." *Id.* at 914.

39.     The most important thing to note from *Scarbrough* is that the defendant had a full trial on the merits in the state-court and in the bankruptcy court where he was allowed to testify as to his level of intent, and two factfinders determined that the defendant knew he was lying about the plaintiff in that case. That same procedural posture and record is not present here. Rather, Debtor was not allowed to testify to his culpability in the Connecticut Action and has not yet been afforded the opportunity to do so in front of the Bankruptcy Court.

40.     To be sure, the *Scarbrough* bankruptcy court did note that the jury was instructed that the defendant made statements "he knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)," and then subsequently reasoned that this instruction thus showed that the jury "made a finding on the issue of Debtor's subjective belief in the veracity of his own statements." *Id.* at 912. But this should be read in the context of the rest of the *Scarbrough* record, which, as described above, indicates that two factfinders determined that the defendant knew he was lying about the plaintiff in that case. And to the extent that

14

*Scarbrough* can be read as giving preclusive effect to a defamation judgment that could have been based on reckless conduct, this Court should simply reject its holding and the Bankruptcy Court's reliance on it, as such a holding is counter to this Court's pronouncement in *Mahadevan* and the numerous other cases cited above that were also cited to the Bankruptcy Court. Moreover, in the subsequent appeal to the Fifth Circuit, which the Bankruptcy Court also relies on, the issue of the disjunctive jury instruction was not raised, so the Fifth Circuit had no occasion to opine on it.

41.     Accordingly, because numerous other courts from various circuits (including this Court) have held a jury award for defamation that could have been based on reckless conduct due to a disjunctive jury instruction does not necessarily decide the issue of "willful and malicious injury" under § 523(a)(6), and because the Bankruptcy Court did not provide any analysis for why this case is different, there are substantial grounds for a difference opinion as to the Bankruptcy Court's finding on defamation.

42.     Moving on to the claim of IIED, the same logic applies. The Bankruptcy Court quoted the jury instruction on IIED, which stated that Debtor could be found liable for IIED if he "intended to inflict emotional distress **or** [if he] knew or should have known that emotional distress was the likely result of his conduct." (Doc. 67) (quoting Jury Instructions, Doc. 57-21). Under Connecticut law, as is the case most everywhere, the phrase "knew or should have known" is synonymous with recklessness. *See Donohue v. Shop-Rite Supermarkets*, No. CV146041233S, 2014 WL 5094294, at *3 (Conn. Super. Ct. Aug. 28, 2014) (noting that the phrase "knew or should have known" was sufficient to state a claim for recklessness). For that reason, the § 523(a)(6) issue was not necessary to, nor inherent in, the IIED judgment.

43.     This Court determined this exact issue in *Mahadevan*. In *Mahadevan*, the plaintiff sued the defendant under California law for negligence, defamation, and intentional infliction of emotional distress after the defendant, the plaintiff's former academic advisor, accused the plaintiff of plagiarizing two

scientific papers. *Id.* at 657. At trial, the jury found for the plaintiff, awarding compensatory and exemplary damages. *Id.* After the defendant filed for bankruptcy, the plaintiff filed an adversary proceeding, seeking to declare the judgment nondischargeable pursuant to § 523(a)(6). *Id.* at 658. The bankruptcy court granted the plaintiff's motion for summary judgment finding that collateral estopped barred the defendant from relitigating the state-court judgments because the jury had already determined that the defendant's conduct in incurring the debt was willful and malicious. *Id.*

44.     On appeal, the District Court for the Southern District of Texas reversed the bankruptcy court, finding that because the jury was instructed that the defendant could have been held liable if the jury found that he acted intentionally **or** with reckless disregard, then the issue of willful and malicious conduct had not been necessarily decided in the California state-court case because "[d]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 664 (quoting *Kawaauhau*, 523 U.S. at 64). The court further reasoned that "jury instructions and the verdict form d[id] not, alone, support the finding that Mahadevan acted with an intent to harm." *Id.* at 665. While acknowledging that courts can look beyond the judgment and instructions to see if there was evidence in the state-court proceedings that support a finding of intent, the district court found that the plaintiff did not attach any such evidence to his motion for summary judgment, depriving the bankruptcy court of that record to evaluate. *Id.* The court thus reversed and remanded the case back to the bankruptcy court for further proceedings. *Id.* at 667.

45.     The Bankruptcy Court did not point to any other evidence from the record showing that Debtor acted intentionally (because there was none since he was not allowed to testify to his level of culpability), and instead relied solely on the jury instruction: "Nothing in the jury instruction for defamation or intentional infliction of emotional distress contemplates that a lesser standard of intent should apply to Jones's knowledge of the injury." (Doc. 76 at 14). But as the disjunctive jury instruction

16

shows, this statement is simply wrong. The jury instruction for IIED does contemplate a lesser standard of intent by stating that Debtor "knew or should have known that emotional distress was the likely result of [his] conduct." (*Id.*).

46.     Debtor cited numerous other cases to the Bankruptcy Court that followed the same reasoning as did *Mahadevan*. *See Dang*, 560 B.R. at 293 ("Disjunctive jury instructions in state-court judgments make it difficult for a bankruptcy court to give preclusive effect to that judgment in deciding whether the judgment debt is nondischargeable."); *see also Doughty v. Hill (In re Hill)*, 265 B.R. 270, 276-77 (Bankr. M.D. Fla. 2001) ("Because the jury's finding of [IIED] could have based upon a finding of reckless disregard, the elements of [IIED] under California law do not closely mirror the requirements for excepting a debt from discharge under § 523(a)(6). Accordingly, collateral estoppel does not apply to the jury's finding of [IIED]. The Court need not address whether the remaining requirements of collateral estoppel, as to the [IIED], are met."); *B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 589 (B.A.P. 1st Cir. 2012) ("If the judgment were based upon reckless disregard, a 'strong probability' is not identical to 'substantial certainty.'"). But the Bankruptcy Court did not address any of them.

47.     Finally, the Bankruptcy Court itself shows that there are substantial grounds for a difference of opinion by seemingly contradicting itself in its own Connecticut Order and the order it wrote concerning a different judgment from a Texas state court concerning the Sandy Hook Shooting. *Compare* (Doc. 76) (Connecticut Order), *with* (Texas Adv. Doc. 46) (*Memorandum Decision on Texas Plaintiffs' Motion for Summary judgment Against Jones* (the "Texas Order")). As to the inconsistencies within the Connecticut Order at issue, the Bankruptcy Court denied summary judgment as to common-law punitive damages because the jury charge instructed that common law punitive damages could be awarded for conduct that was "willful, wanton, or malicious," and under Connecticut law, wanton misconduct is defined as "reckless misconduct" (Doc. 76 (quoting Doc. 57-21)). Thus, the Bankruptcy Court found that

collateral estoppel did not apply to the jury's finding on common-law punitive damages because the jury was given a disjunctive jury instruction, allowing it to award punitive damages based on reckless conduct. (Doc. 76 at 17 ("But unlike the instructions for defamation and intentional infliction of emotional distress, the jury had a right to award common-law punitive damages based on reckless actions *or* actual intent to cause harm. This proves fatal on summary judgment.")). This is a correct pronouncement of the law: if a state-court jury is given an instruction on a cause of action that allows it to award damages based on reckless conduct, and there are not "additional specific findings [as to intent]," then a Bankruptcy Court cannot give such a jury verdict preclusive effect for purposes of § 523(a)(6). *In re Mahadevan*, 617 F. Supp. 3d at 665 (alteration in original) (quoting *In re Kauanui*, No. 14-00077, 2015 WL 359088, at *3 (Bankr. D. Haw. Jan. 23, 2015)).

48.     The Bankruptcy Court's reasoning in denying summary judgment on common-law punitive damages is almost impossible to square with its reasoning on granting summary judgment on compensatory damages for the defamation and IIED claims. As to defamation, Debtor has already explained above that the jury instruction on defamation did not list a level of culpability, and that under Connecticut law, the most stringent standard available for a claim of defamation is "actual malice," which can be met with mere recklessness as to the veracity of the statement.

49.     As to IIED, the Bankruptcy Court quoted the jury instruction in its entirety, which listed the four elements of IIED, one of which was that "defendants intended to inflict emotional distress ***or the defendants knew or should have known*** that emotional distress was the likely result of their conduct." (Doc. 76 at 14 (emphasis added) (quoting Jury Charge, Doc. 57-21)). This instruction, like the instruction on common-law punitive damages, allowed the jury to award compensatory damages for IIED based on recklessness. *See Donohue v. Shop-Rite Supermarkets*, No. CV146041233S, 2014 WL 5094294, at *3

(Conn. Super. Ct. Aug. 28, 2014) (noting that the phrase "knew or should have known" was sufficient to state a claim for recklessness).

50.     Moreover, the Bankruptcy Court's reasoning on IIED is at odds with its reasoning in *Heslin v. Jones (In re Jones)*, No. 22-33553, 2023 WL 6938266 (Bankr. S.D. Tex. Oct. 19, 2023) (Texas Adv. Doc. 46). In *Heslin*, the Bankruptcy Court issued an order on a case involving a judgment from a Texas state court concerning the same conduct underlying the Connecticut Action. In *Heslin*, the trial court also entered default judgments against Debtor on claims of defamation and IIED, and those Plaintiffs similarly attempted to apply the doctrine of collateral estoppel to the judgments in an adversary proceeding against Debtor. However, the Bankruptcy Court denied summary judgment as to the IIED claim in *Heslin* because "[t]he jury was asked to find damages based on intentional or reckless acts, and it did so." *Id.* at *10; (Texas Adv. Doc. 46 at 15). The Bankruptcy Court in *Heslin* then reasoned that there would need to be a trial to determine what, if any, part of the IIED damages stem from willful and malicious injury. *Id.*; (Texas Adv. Doc. 46 at 15-16).

This is obviously not the route the Bankruptcy Court took in the instant case, and the only difference between the Bankruptcy Court's finding in the Connecticut Order and its finding in *Heslin* as it relates to IIED is that the jury instruction in *Heslin* stated that Jones acted either "intentionally or recklessly," while the jury instruction in the Connecticut Action stated that "defendants intended to inflict emotional distress or the defendants knew or should have known that emotional distress was the likely result of their conduct." But as described above, the phrase "knew or should have known" is simply another way to say reckless. Thus, not only are there substantial grounds for a difference of opinion based on all the cases Debtor cites above, but there are substantial grounds for a difference of opinion based on the Bankruptcy Court's own reasoning on common law damages in the instant case and its IIED reasoning in *Helsin*. Accordingly, the Court should grant Debtor's Motion so it can fix these discrepancies.

## 2. CUTPA

51.     Furthermore, the CUTPA punitive damages award could have also been validly rendered in the absence of a determination of "willful and malicious injury" under § 523(a)(6). Under CUTPA, an award of punitive damages may be justified by either "an intentional and wanton violation" of another's rights **or** "a reckless indifference to [those] rights." *Advanced Fin. Servs., Inc. v. Associated Appraisal Servs., Inc.*, 830 A.2d 240, 250 (Conn. App. 2003). Indeed, a CUTPA punitive damages award can be based on mere recklessness, which is a less stringent standard than that required for the § 523(a)(6) exception. *See Birnie v. Elec. Boat Corp.*, 953 A.2d 28, 38 (Conn. 2008) (holding that collateral estoppel is improper when the second action carries a heavier burden than the first action).

52.     A CUTPA punitive damages award does not require an objective finding of substantial certainty of harm. Connecticut courts instead consider a range of factors to determine the propriety of such an award, with no single factor being dispositive or essential. These factors include concealment of wrongdoing, profit-seeking motive, low damages resulting in low incentive to bring suit, whether the award will deter the conduct without financially destroying the defendant, and the reprehensibility of conduct. *Ulbrich v. Groth*, 78 A.3d 76, 126 (Conn. 2013). In turn, reprehensibility is assessed based on another list of nonessential factors, such as the nature of harm caused, indifference or reckless disregard for health or safety, financial vulnerability of the target, repeated actions versus isolated incidents, and whether the harm resulted from intentional malice, trickery, deceit, or mere accident. *Id.* at 127. Therefore, the only way to link the CUTPA award to the § 523(a)(6) standard is through a double layer of nonessential considerations. A finding of reprehensibility is not necessary to establish a CUTPA award, and the objective substantial certainty of harm is not necessary to establish reprehensibility.

53.     True, in its 45-page opinion on damages, the state court stumbled on the phrase "certain to cause harm." Based on this, the Bankruptcy Court granted summary judgment stating that "[i]t is irrelevant

20

that the state court could have awarded damages on reckless acts. What is important is what the court actually did." (Doc. 76 at 16). That statement is wrong. From what can be gathered, it was not based on Connecticut collateral estoppel law as is required by 28 U.S.C. § 1738. While there is ground for that statement under the laws of other states, the statement does not reflect collateral estoppel law in Connecticut. In Connecticut, even "[i]f an issue has been determined, [if] the judgment is not dependent upon the determination of th[at] issue, the parties may relitigate [it] in a subsequent action." *Laurel Beach*, 785 A.2d at 1176. Findings or statements on issues that go beyond what is essential to the judgment are given no preclusive effect. *Gladysz v. Plan. & Zoning Comm'n of Town of Plainville*, 773 A.2d 300, 307 (Conn. 2001) (noting that, for collateral estoppel purposes, "statements by a court regarding a nonessential issue are treated as merely dicta."). Moreover, read more closely and in context, the Connecticut state court did not use the phrase "certain to cause harm" in the same way that the Fifth Circuit uses it when describing the § 523(a)(6) standard.

54.     Admittedly, the language in the Punitive Damages Order makes it closer call as to whether "willful and malicious injury" under § 523(a)(6) was necessarily decided for the CUTPA punitive damages. Debtor cannot present to the Court the litany of cases that it presented for the proposition that disjunctive jury instructions on defamation and IIED in a state-court proceeding cannot preclude relitigation of "willful and malicious injury" under § 523(a)(6). However, Debtor does believe the law is on his side, and to the extent the Court does not believe the CUTPA issue satisfies the substantial-ground-for-a-difference-of-opinion element, the Court should nonetheless review the Bankruptcy Court's Order as it relates to CUTPA damages. As a general matter, where a court has "jurisdiction over an interlocutory appeal of one ruling, [it has] the discretion to exercise pendent appellate jurisdiction over other district court rulings that are 'inextricably intertwined' or 'necessary to ensure meaningful review' of the first." *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Swint v. Chambers Cnty. Comm'n*, 514

U.S. 35, 51, (1995); *see also Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012); *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81 (1st Cir. 2002); *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002); *Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995).

55.     Here, all the damages at issue are inextricably intertwined with each other. It would not make sense for the Court to only review whether collateral estoppel precludes the relitigation of the compensatory damages for defamation and IIED and not the CUTPA damages. If the Court did decide to split them up, the parties would be forced to have one trial now, and if the Bankruptcy Court's decision on CUTPA damages is reversed after Debtor's appeal of the final judgment, then there would most likely be a second trial on the CUTPA damages. The Court should forestall this inefficiency and simply review the Bankruptcy Court's Order as it relates to all the categories of damages from the Connecticut Action.

**B.  Actually Litigated**

56.     There is also substantial ground for a difference of opinion on whether the default judgment on either defamation or IIED was "actually litigated" under Connecticut law. To be "actually litigated," the precise issue must have been before the court in the first action, the subsequent court considering collateral estoppel cannot "improperly merge[]" even "overlap[ping]" standards to invoke the doctrine. *See Gladysz v. Plan. & Zoning Comm'n of Town of Plainville*, 773 A.2d 300, 308 (Conn. 2001) (first quote); *Independent Party of CT-State Central v. Merrill*, 200 A.3d 1118, 1142 (Conn. 2019) (second quote). Here, the Bankruptcy Court improperly merged state law tort standards with bankruptcy nondischargeability standards under § 523(a)(6).

57.     Issues in default judgments are not normally considered "actually litigated," but there is an exception for default judgments rendered as a sanction for discovery violations *in certain circumstances*. When seeking to apply § 523(a)(6), one such circumstance is when an extensive damages hearing following the default judgment is the equivalent of a hearing on § 523(a)(6). *Cf. King v. Huizar (In re*

*Huizar*), 609 B.R. 482, 491-92 (Bankr. W.D. Tex. 2019) (noting that defendant was allowed to "present any and all evidence he desired during the five days of hearing on the issue of damages."). No such equivalency can be found here. This is evidenced by the fact that the state court expressly forbid any testimony relating to intent to cause harm, which is the crux of the § 523(a)(6) inquiry. (Doc. 61-3, Transcript of Connecticut Court Granting Plaintiffs' Motion in Limine).

58.     Moreover, even if the Court disagrees that the "actually litigated" issue satisfies the substantial-ground-for-difference-of-opinion element, it can and should consider the issue on interlocutory appeal along with the "necessarily decided" issue, as the two issues are inextricably intertwined with each other since both are elements that must be satisfied in order to apply the doctrine of collateral estoppel under Connecticut law. *See supra* at 10-11. It would disserve judicial efficiency to only review certain issues decided by the Bankruptcy Court but leave others for an appeal after a final judgment.

**C. Fairness Factors and Constitutionality**

59.     The Bankruptcy Court also failed to apply Connecticut collateral estoppel law in other ways. Under Connecticut law, collateral estoppel doctrine "should be flexible and must give way when [its] mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies." *Cumberland Farms, Inc. v. Town of Groton*, 808 A.2d 1107, 1117 (Conn. 2002).

60.     This balancing test is integral to the collateral estoppel analysis in Connecticut, which the Bankruptcy Court cannot ignore. It is not, as the Bankruptcy Court holds, only an appellate issue. (Doc. 76 at 17-18). Thus, the Bankruptcy Court must confront the underlying issues of free speech and due process, which are societal values more important than the convenience afforded by collateral estoppel. Indeed, here, collateral estoppel affords no convenience of finality because, due to the split opinion, the

§ 523(a)(6) issue needs to be litigated anyway. In fact, the split opinion runs counter to another virtue of collateral estoppel: consistency.

61.     Moreover, as Debtor analyzed at length in his Response to Plaintiff's Motion for Summary Judgment (Doc. 61), the consideration of constitutional issues is a stand-alone *federal* collateral estoppel question—not exclusively a *state* appellate question—under 28 U.S.C. § 1738. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and . . . federal courts are not required to accord full faith and credit to such a judgment."). The Bankruptcy Court failed to analyze Debtor's argument in this regard, and the Court here should review the Connecticut Order as it relates to the constitutionality of the Connecticut Judgment.

62.     Admittedly, there is not any law from any circuit directly on point to these two issues, but the Court should nonetheless review these issues on interlocutory appeal because they are inextricably intertwined with the larger question of whether the doctrine of collateral estoppel applies. *See supra*. described above, it does not make sense for the Court to only review certain issues decided by the Bankruptcy Court but leave others for an appeal after a final judgment, especially when all the issues concern whether to apply the doctrine of collateral estoppel under Connecticut law.

**III.    An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation**

63.     An immediate appeal of the Connecticut Order will materially advance this case. This element will be satisfied if permitting an interlocutory appeal "will speed up the litigation." *Tesco Corp. v. Weatherford Intern., Inc.*, 722 F. Supp. 2d 755, 767 (S.D. Tex. 2010); *Pemex Exploration y Produccion v. BASF Corp.*, No. CIV.A. H-10-1997, 2011 WL 11569219, at *12 (S.D. Tex. Feb. 11, 2011); *Adhikari v. Daoud & Partners*, No. 09-cv-1237, 2012 WL 718933, at *1 (S.D. Tex. Mar. 5, 2012). When determining whether an interlocutory appeal will materially advance the ultimate termination of the

litigation, a court should examine "whether an immediate appeal would (1) eliminate the need for a trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013).

64.     Here, resolving the issues presented in this appeal would materially advance the termination of the case because it would ensure that the parties would only need to have one trial. On the other hand, if the Court decides not to grant leave to appeal the Connecticut Order, then the parties will have to have a trial on whether the common-law punitive damages were based on willfulness and maliciousness. If Debtor prevails at that trial, then he would be allowed to appeal the Bankruptcy Court's grant of summary judgment on the compensatory damages and CUTPA damages, and, if victorious on appeal, the parties would have to have a second trial to determine which of those damages satisfy the § 523(a)(6) standard. Immediate appeal would prevent the need for two separate trials.

65.     In addition, the Fifth Circuit has, on occasion, stated that interlocutory appeals are only appropriate under "exceptional" circumstances or in "big" cases. *Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). This case certainly qualifies as exceptional. Debtor is currently preparing his plan of reorganization, including treatment for claims stemming from the Connecticut Judgment, and a determination of which parts of that judgment are and are not nondischargeable is vital to the conclusion of the plan.

## CONCLUSION

WHEREFORE, Debtor has satisfied the factors for granting a motion for leave to appeal the Connecticut Order and for the reasons set forth herein and in the interests of justice, Debtor respectfully requests that this Court enter an order granting leave to appeal the Connecticut Order and granting such other and further relief as is just and proper.

Date: November 2, 2023

Respectfully submitted,

**CROWE & DUNLEVY, P.C.**

*/s/ Christina W. Stephenson*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon Avenue, Suite 425
Dallas, TX 75201
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

-AND-

J. Christopher Davis
Oklahoma Bar #16629 (admitted *pro hac vice*)
Deric J. McClellan
Oklahoma Bar # 32827 (admitted *pro hac vice*)
222 N. Detroit Ave., Suite 600
Tulsa, Oklahoma 74120
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

**COUNSEL FOR DEFENDANT-APPELLANT
ALEXANDER E. JONES**

## CERTIFICATE OF SERVICE

I certify that on November 2, 2023, a true and correct copy of the foregoing pleading was served via the Court's ECF system to the parties registered to receive electronic notice and/or via electronic mail on the following:

Ryan E. Chapple
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
Telephone: (512) 477-5000
Fax: (512) 477-5011
Email: rchapple@cstrial.com
*Counsel to the Sandy Hook Families*

Alinor C. Sterling
**KOSKOFF KOSKOFF & BIEDER PC**
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Telephone: (203) 336-4421
Email: asterling@koskoff.com

Kyle J. Kimpler
Christopher Hopkins
Daniel A. Negless
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990
Email: kkimpler@paulweiss.com
Email: chopkins@paulweiss.com
Email: dnegless@paulweiss.com
*Counsel to the Sandy Hook Families other*
*than Richard M. Coan, as chapter 7 trustee*
*for the estate of Erica Lafferty*

Eric Henzy
**ZEISLER & ZEISLER, PC**
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
Telephone: (203) 368-5495
Email: ehenzy@zeislaw.com
*Counsel to Richard M. Coan, as chapter 7*
*trustee for the estate of Erica Lafferty*

/s/ Christina W. Stephenson
Christina W. Stephenson

27

# EXHIBIT 1

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 19, 2023

Nathan Ochsner, Clerk

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-33553 |
| ALEXANDER E. JONES, | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |
| DAVID WHEELER, *et al.*, | § | |
| | § | |
| v. | § | ADVERSARY NO. 23-03037 |
| | § | |
| ALEXANDER E. JONES, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM DECISION ON CONNECTICUT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST JONES

Plaintiffs are parents of children murdered in the Sandy Hook Elementary School tragedy and a first responder. Before this bankruptcy case started, the Plaintiffs sued Alexander E. Jones and other defendants in a Connecticut state court. Three years into the litigation, the state court entered a default judgment against Jones based on repeated violations of discovery orders. The default judgment made Jones liable for the defamation and emotional distress claims. And, under Connecticut law, deemed Jones to have admitted all allegations in the Plaintiffs' state court petition. A jury awarded about $1.4 billion in compensatory and punitive damages for defamation, intentional infliction of emotional distress, and the Connecticut Unfair Trade Practices Act claims.

Jones and an entity he owns named Free Speech Systems, LLC filed separate bankruptcy cases in 2022. Free Speech elected to proceed under Subchapter V of the Bankruptcy Code. Jones is in a traditional chapter 11 case, not Subchapter V. This decision involves Jones's case only.

The Bankruptcy Code provides that some debts are excepted from a bankruptcy "discharge" and remain enforceable against the debtor even after a bankruptcy case ends. Plaintiffs started this adversary proceeding seeking an order stating that the debts related to the state court action are excepted from discharge under § 523(a)(6) of the Bankruptcy Code. They also believe that the state court record, including court orders and jury awards, prove that there are no material

1 / 18

issues of disputed fact and that summary judgment is warranted as a matter of law. Jones disagrees.

After careful consideration, and for the reasons explained in detail below, the Court grants summary judgment on all claims, except common-law punitive damages.

## Background

In May 2018, thirteen of the Plaintiffs started the lawsuit captioned *Lafferty, et al. v. Jones, et al.*, UWY-CV-18-6046436-S, in the Judicial District of Fairfield at Bridgeport in Connecticut Superior Court.[1] Then in December 2018 and January 2019, two substantively similar complaints—captioned *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046437-S and *Sherlach, et al. v. Jones, et al.*, UWY-CV-18-6046438-S—were consolidated with the *Lafferty* complaint (the "**Connecticut Action**").[2] Plaintiffs alleged the defendants were liable for, among other things, (i) invasion of privacy, (ii) defamation and defamation per se, and (iii) intentional infliction of emotional distress.[3] They also alleged the defendants violated the Connecticut Unfair Trade Practices Act ("**CUTPA**").[4]

In November 2021, the state court entered a default judgment against the defendants for repeated violation of discovery orders.[5] The court stated on the record that the Jones defendants withheld analytics and information that were "critical to the plaintiffs' ability to conduct meaningful discovery and to prosecute their claims."[6] That the "callous disregard of their obligations to fully and fairly comply with discovery and Court orders on its own merits a default against the Jones defendants."[7] And that "the Jones defendants were not just careless" but "their failure to produce critical documents, their disregard for the discovery process and procedure and for Court orders" was a "consistent pattern of obstructive conduct."[8]

---

[1] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 1, ECF No. 57-4.

[2] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 2, 3, ECF Nos. 57-5, 57-6.

[3] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶¶ 336–84, 2 at ¶¶ 329–77, and 3 at ¶¶ 416–64, ECF Nos. 57-4, 57-5, 57-6.

[4] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶¶ 385–94, 2 at ¶¶ 378–87, and 3 at ¶¶ 465–74, ECF Nos. 57-4, 57-5, 57-6.

[5] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74, ECF No. 59-24.

[6] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 14:12–15, ECF No. 59-24.

[7] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 14:15–18, ECF No. 59-24.

[8] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 74 at 15:1–4, ECF No. 59-24.

The Connecticut Action proceeded to a jury trial on damages for intentional infliction of emotional distress, defamation/defamation per se, invasion of privacy, and CUTPA claims against Jones and Free Speech.[9]

The state court issued lengthy jury instructions. The court instructed jurors that under applicable law, each defendant was responsible for the other's conduct and the entirety of the harm to the Plaintiffs.[10] Here are some of the jury instructions for defamation and intentional infliction of emotional distress:[11]

| Defamation | Intentional Infliction of Emotional Distress |
|---|---|
| Certain defamatory statements, whether orally or in writing, are considered to be so harmful in and of themselves that the person to whom they relate is entitled to recover general damages . . . | The defendants intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of their conduct. |
| The defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large. | The conduct was extreme and outrageous. The conduct was the cause of emotional distress experienced by the plaintiffs. The emotional distress sustained by the plaintiff was severe. |
| The law conclusively presumes that there is injury to the plaintiff's reputation. A plaintiff is not required to prove that his or her reputation was damaged. The plaintiff is entitled to recover as general damages for the injury to his or her reputation and for the humiliation and mental suffering caused. | It is established that the defendants inflicted such emotional distress on the plaintiffs. |
| [D]efendants proximately caused harm to the plaintiffs by spreading lies about the plaintiffs to their audience and the public by urging their audience and the public | The court has determined that the defendants are liable for having invaded the privacy of each plaintiff by placing him or her in a false light before the public by publicizing material about him or her that is false and is such a major misrepresentation of his or her |

---

[9] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 6, 11–12, ECF No. 57-21.

[10] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 6, ECF No. 57-21. Thus, any argument that findings about the defendants' conduct do not apply to Jones individually is wrong.

[11] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 12, 14, 15, 23, ECF No. 57-21.

| to investigate and look into the plaintiffs and to the stop the people supposedly being the Sandy Hook hoax. | character, history, activities or beliefs that a reasonable person in the plaintiff's position would either be expected to take serious offense or be justified in feeling offended and aggrieved. |
|---|---|

The state court also instructed the jury it could award common law punitive damages if the defendants' actions were willful, wanton, or malicious.[12] A "willful and malicious" harm was one inflicted intentionally, and "wanton" was "reckless misconduct."[13]

The state court also determined that the defendants were liable for violating CUTPA because "their business conduct was predicated on damaging the plaintiffs and was immoral, unethical, oppressive, or unscrupulous."[14] The jury charge states that the CUTPA claim would be assessed separately by the state court.[15]

In October 2022, the jury awarded the Plaintiffs a total of $965 million in compensatory damages for defamation and emotional distress.[16] The award consisted of $403.6 million in defamation damages and $561.4 million in emotional distress damages. They also awarded common-law punitive damages in an amount left for the state court to award separately.

The Plaintiffs also moved for an award of punitive damages under CUTPA, which Jones opposed.[17] Under Connecticut law, CUTPA claims are determined by a court, not a jury. In November 2022, the state court issued a memorandum opinion setting the jury's award of common-law punitive damages for attorney's fees at $321.65 million and costs of about $1.5 million and awarding CUTPA punitive damages of $150 million.[18] The court found that the defendants (including Jones) engaged in intentional and malicious conduct certain to harm the Plaintiffs:[19]

---

[12] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23–24, ECF No. 57-21.

[13] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[14] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23, ECF No. 57-21.

[15] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 23, ECF No. 57-21.

[16] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 19, ECF No. 57-22. The emotional distress damages consisted of damages for invasion of privacy and damages "for other emotional distressed suffered." *See* Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 21, ECF No. 57-21.

[17] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 20, ECF No. 57-23.

[18] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 45–46, ECF No. 58-2.

[19] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 43–44, ECF No. 58-2.

> The defendants' concealment of their conduct and wrongdoing, by virtue of their stunningly cavalier attitude toward both their discovery obligations and court orders regarding discovery throughout the entire pendency of the case, their unprepared corporate representative, and intentional discovery abuses, militates in favor of a substantial award of punitive damages.
>
> The record clearly supports the plaintiffs' argument that the defendants' conduct was intentional and malicious, and certain to cause harm by virtue of their infrastructure, ability to spread content, and massive audience.
>
> The record also establishes that the defendants repeated the conduct and attacks on plaintiffs for nearly a decade, including the trial, wanton, malicious, and heinous conduct that caused harm to the plaintiffs.
>
> This depravity, and cruel, persistent course of conduct by the defendants establishes the highest degree of reprehensibility and blameworthiness.[20]

In December 2022, Jones filed his chapter 11 bankruptcy petition.[21] Soon after, this Court entered an agreed order involving Jones, Free Speech, and the Plaintiffs.[22] The agreed order modified the automatic stay to allow the state court to rule on post-trial motions and for any appeals by the defendants to proceed.[23] The Plaintiffs also agreed not to object to an application by Jones and Free Speech to employ their requested appellate counsel.[24] With the automatic stay modified, the state court denied a motion for new trial and Jones appealed the judgments to a Connecticut appellate court.[25]

The Plaintiffs started this adversary proceeding to determine the nondischargeability of the judgment debts against Jones.[26] They seek summary judgment mainly on the theory that the damages opinion, jury verdict, and admitted allegations from the Connecticut Action satisfy the requirements of

---

[20] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 41–44, ECF No. 58-2.

[21] *See* Voluntary Ch. 11 Pet. of Alexander E. Jones, Case No. 22-33553, ECF No. 1.

[22] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[23] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[24] *See* Agreed Order Modifying the Automatic Stay, Case No. 22-33553, ECF No. 58.

[25] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 23, 24, ECF No. 58-3, 58-4.

[26] Brief in Supp. of Mot. for Summ. J. at 1, ECF No. 60.

collateral estoppel on the issue of willful and malicious injury under § 523(a)(6).[27] In the alternative, they believe that the state court record establishes willful and malicious injury.[28]

Jones argues that summary judgment is not appropriate because (i) the issue of "willful and malicious injury" was not essential to the judgment in the Connecticut Action, (ii) federal law does not require federal courts to grant full faith and credit to allegedly unconstitutional state court judgments, (iii) public policy concerns about fairness, quality, and extent of the Connecticut Action outweigh any convenience afforded by the finality of judgment, (iv) collateral estoppel should not be applied when it appears the prior proceeding was skewed with the intent to obtain a non-dischargeable judgment in anticipation of bankruptcy, and (v) the record evidence produced by the Plaintiffs does not independently establish that they are entitled to judgment as a matter of law on a § 523(a)(6) claim.[29]

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction under 28 U.S.C. § 1334. The parties' express and implied consent also provides this Court constitutional authority to enter a final judgment under *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015) and *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).

## Legal Standard

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings. FED. R. BANKR. P. 7056. A movant is entitled to summary judgment by showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law." *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018).

Plaintiffs, as the movants here, bear the burden of proof at trial. So they must show the lack of a genuine issue of disputed fact that entitles them to judgment as a matter of law. If successful, the burden shifts to the nonmovant, Jones, to identify specific record evidence and articulate precisely how the evidence

---

[27] Brief in Supp. of Mot. for Summ. J. at 2–3, ECF No. 60.

[28] Brief in Supp. of Mot. for Summ. J. at 3, ECF No. 60.

[29] Def.'s Resp. to Mot. for Summ. J. at 10–12, ECF No. 61.

purports to defeat summary judgment. *See Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 869 (S.D. Tex. 2019) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). In determining whether summary judgment is appropriate, all inferences are drawn in Jones's favor. *See Harville v. City of Houston, Mississippi,* 945 F.3d 870, 874 (5th Cir. 2019).

<u>Analysis</u>

Interpreting the Bankruptcy Code begins with analyzing the text. *See Whitlock v. Lowe (In re DeBerry)*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha."); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [the court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

I.     **Section 523(a)(6) and Collateral Estoppel**

A creditor must prove nondischargeability of a debt by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Section 523(a) of the Bankruptcy Code excepts certain debts from discharge against an individual debtor. The Bankruptcy Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed . . . ." § 101(5).

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity. . . ." The Bankruptcy Code does not define "willful" or "malicious." In *Kawaauhau v. Geiger*, the U.S. Supreme Court held that a "willful and malicious injury" means a "deliberate or intentional injury." 523 U.S. 57, 61 (1998). This means that there must be intent to cause the injury, not just the act which leads to the injury. *Id.* at 61–62. In the Fifth Circuit, intent to cause injury exists "where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Shcolnik*, 670 F.3d 624, 629 (5th Cir. 2012) (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998)). The objective standard requires a court to analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Chowdary v. Ozcelebi (In re Ozcelebi)*, 640 B.R. 884, 905 (Bankr. S.D. Tex. 2022) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361–62 (5th Cir. 2007)). Substantial certainty does not mean absolute certainty, but it must be something more than a high probability. *See Mahadevan v. Bikkina (In re Mahadevan)*, 617 F.

Supp. 3d 654, 660 (S.D. Tex. 2022) (citing *In re D'Amico*, 509 B.R. 550, 561 (S.D. Tex. 2014)).[30]

Because of this intent requirement, debts arising from reckless or negligently inflicted injuries are not excepted under § 523(a)(6). *Geiger*, 523 U.S. at 64. For example, debts related to a debtor's act of intentionally driving a car into a crowded bar and killing a creditor's relatives were found to be based on willful and malicious injuries. *See Mahadevan*, 617 F. Supp. 3d at 660 (citing *Red v. Baum* (*In re Red*), 96 F. App'x 229, 230 (5th Cir. 2004)). But debts related to a debtor's act of illegally selling a rifle to an individual, who years later shot people, were not based on a willful and malicious injury. *See Leyva et al. v. Braziel (In re Braziel)*, 653 B.R. 537, 558 (Bankr. N.D. Tex. 2023). The debtor intended to sell the rifle to the third party. *Id.* at 557. And while the sale itself was an intentional illegal act, it was not an act intended to harm the victims under either an objective or subjective standard. *Id.*

Plaintiffs can invoke collateral estoppel to establish that a debt is nondischargeable. *See Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Collateral estoppel prevents parties from relitigating issues of fact that were already "determined by a valid and final judgment" in a prior lawsuit in any future lawsuit involving the same parties. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). Federal courts must give full faith and credit to state-court judgments. *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986) ("[U]nder the Full Faith and Credit Act a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."); *Shimon v. Sewerage & Water Bd. Of New Orleans,* 565 F.3d 195, 199 (5th Cir. 2009) (quoting *Parsons Steel*).

The laws of the state in which the judgments were entered determine whether collateral estoppel applies. *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996). A Connecticut state court entered the judgment, so the Connecticut rules of issue preclusion apply here. Under Connecticut law, collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 15 A.3d 601, 613 (Conn. 2011). Plaintiffs must establish that: "[1] [t]he issue must have been fully and fairly litigated in the first action, [2] it must have been actually decided, and [3] the decision must have been necessary to the judgment." *Wiacek Farms,*

---

[30] The plain meaning of willful and malicious tracks the objective and subjective tests under *Shcolnik* and *Miller*. Willful means "done deliberately: intentional." *Willful*, Merriam-Webster Online Dictionary (https://www.merriam-webster.com/dictionary/willful) (last visited Oct. 17, 2023). And malicious means "having or shown a desire to cause harm to someone" Malicious, Merriam-Webster Online Dictionary (https://www.merriam webster.com/dictionary/malicious) (last visited Oct. 17, 2023).

*LLC v. City of Shelton*, 30 A.3d 27, 32 (Conn. 2011) (quoting *Busconi v. Dighello*, 668 A.2d 716, 723 (Conn. App. Ct. 1995)).

An issue is actually litigated if it was "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *See Solon v. Slater*, 287 A.3d 574, 586 (Conn. 2023). Fully and fairly litigated means that the party to be estopped "had an adequate opportunity to litigate the matter in the earlier proceeding." *Custom Pools v. Underwriters Inc.*, No. CV 940135908, 1996 WL 66264, at *2 (Conn. Super. Ct. Jan. 19, 1996); *Jackson v. R.G. Whipple, Inc.*, 627 A.2d 374, 380 (Conn. 1993). To be necessary to the judgment, the determination of the issue must have been central to the judgment rendered (i.e., the judgment could not have been rendered without the determination). *See Wiacek Farms*, 30 A.3d at 32. In other words, "an issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Cumberland Farms, Inc. v. Town of Groton*, 808 A.2d 1107, 1116 n.17 (Conn. 2002) (internal citations omitted). It is not enough that a fact could have been determined by the prior court but was not. *World Wrestling Entm't, Inc. v. THQ, Inc.*, No. X05CV065002512S, 2008 WL 4307568, at *6 (Conn. Super. Ct. Aug. 29, 2008) (citing *State v. Aparo*, 614 A.2d 401, 412 (Conn. 1992)).

Connecticut courts also note that there must be an identity of issues between the state court action and the issues to be decided here before collateral estoppel applies. *See, e.g.*, *Peterson v. iCare Mgmt., LLC*, 250 A.3d 720, 729 (Conn. 2021). This requires a court to assess the facts underlying a plaintiff's claim in the first proceeding. *See Solon*, 287 A.3d at 587. A court should determine "what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." *Id.* (quoting *Aetna Casualty & Sur. Co. v. Jones*, 596 A.2d 414, 421 (Conn. 1991)). Plaintiffs bear the burden of showing collateral estoppel applies here.

A bankruptcy court does not necessarily need a full state court record to apply collateral estoppel. *See Fielder v. King (In re King)*, 103 F.3d 17, 19 n.1 (5th Cir. 1997). But a state court record devoid of factual findings to support a dischargeability determination is not entitled to summary judgment. *See Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997) (denying application of collateral estoppel where state court record lacked findings of fact).

## II.    Summary Judgment is Granted on Compensatory Damages

### A.    The issues were "fully and fairly litigated" and "actually decided"

Under Connecticut law, the allegations in a petition are deemed admitted, and the defendant's liability is established if a default judgment is entered against a defendant based on discovery abuse. *Smith v. Snyder*, 839 A.2d 589, 598 (Conn. 2004). "[A] default judgment is a decision on the merits and has the same preclusive

effect as any other judgment decided on its merits, so long as the party who is
precluded had an 'adequate opportunity to litigate the matter in the earlier
proceeding.'" *Leblanc-Jones v. Massie (In re Massie)*, No. 14-50579, 2018 WL
3218847, at *3 (Bankr. D. Conn. June 29, 2018) (quoting *State v. Ellis*, 497 A.2d
974, 989 n.22 (Conn. 1985)).

As noted above, the fully and fairly litigated prong is satisfied under
Connecticut law where there is opportunity to litigate the matter, whether or not
the defendant benefits from it. *Custom Pools*, 1996 WL 66264, at *2. Jones had the
opportunity to participate in the state court litigation for three years before the
default judgment was entered. He then participated in the damages trial and
presented evidence on that issue. He also submitted argument before the state court
ruled on common-law and CUTPA punitive damages. Thus, finding that the state
court default judgment order and the resulting damages awards have the effect of
fully and fairly adjudicating the issues decided in connection with the defamation,
intentional infliction of emotional distress, and CUTPA claims is consistent the
reasoning and holdings in Connecticut cases.

Jones argues that the precise issue of "willful and malicious injury" was not
litigated in the Connecticut Action and that he did not have a chance to present
certain defenses at trial. Neither argument changes the outcome here. Remember
that Connecticut law focuses on the facts underlying the claims to determine
identity of issues, and here those facts show identical issues. *See Solon*, 287 A.3d at
587. Federal courts focus on whether a state court made specific findings about an
injury to a plaintiff that meets the test for willful and maliciousness under
§ 523(a)(6), and not the specific label of "willful and malicious." *See, e.g.*,
*Mahadevan*, 617 F. Supp. 3d at 660 (analyzing collateral estoppel principles on
defamation and intentional infliction of emotional distress claims); *In re
Scarbrough*, 516 B.R. 897 (Bankr. W.D. Tex. 2014) (same); *Guion v. Sims (In re
Sims)*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012) (same).

The Plaintiffs' complaints contain multiple well pleaded allegations about
Jones's intent to cause the Plaintiffs harm or substantial certainty that Jones's
actions would cause harm, all of which are deemed admitted as a result of the
default judgment. They, along with the jury award, also constitute fully and fairly
adjudicated issues (and actually decided ones) for purposes of collateral estoppel.

- "Jones is the chief amplifier for a group that has worked in concert to
  create and propagate loathsome, false narratives about the Sandy Hook
  shooting and its victims, and promote their harassment and abuse."[31]

---

[31] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 7, 3 at ¶ 7, ECF Nos. 57-4,
57-6.

- "Jones . . . has persisted in the perpetuation and propagation of this outrageous, deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary, and with no supporting evidence."[32]

- "Alex Jones does not in fact believe that the Sandy Hook Shooting was a hoax — and he never has."[33]

- "Jones has deliberately employed these false narratives about the Sandy Hook shooting, the victims, and their families as part of a marketing scheme that has brought him and his business entities tens of millions of dollars per year."[34]

- "As a result of Jones's campaign, the families and survivors of the Sandy Hook shooting have been forced to endure malicious and cruel abuse at the hands of ruthless and unscrupulous people."[35]

- "On a regular basis, the families and survivors have faced physical confrontation and harassment, death threats, and a sustained barrage of harassment and verbal assault on social media."[36]

- "Jones and Infowars purposefully sought to direct their message and spur 'investigation' of the Sandy Hook families."[37]

- "Jones and his subordinates say what they say not because they are eager to educate or even to entertain their audience. Rather, they deliberately stoke social anxiety and political discord in their listeners . . ."[38]

---

[32] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 8, 3 at ¶ 8, ECF Nos. 57-4, 57-6.

[33] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 9, 3 at ¶ 9, ECF Nos. 57-4, 57-6.

[34] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 11, 3 at ¶ 11, ECF Nos. 57-4, 57-6.

[35] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 13, 3 at ¶ 13, ECF Nos. 57-4, 57-6.

[36] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 14, 3 at ¶ 14, ECF Nos. 57-4, 57-6.

[37] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 83, 3 at ¶ 89, ECF Nos. 57-4, 57-6.

[38] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 97, 3 at ¶ 103, ECF Nos. 57-4, 57-6.

- "The defendants' outrageous, cruel and malicious conduct was the cause of the plaintiff's distress."[39]

- "The defendants, as part of a campaign of harassment and abuse, broadcast numerous outrageous lies about the plaintiffs. . ."[40]

- "The defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[41]

- "The defendants' defamatory publications have injured the plaintiffs' reputations and images, and they have exposed the plaintiffs to public and private hatred, contempt, and ridicule. These false publications have caused the plaintiffs actual and substantial damages."[42]

Jones tries to argue that these issues were not fully and fairly litigated because there was never a trial on liability. But the argument lacks merit because of the legal effect of the default judgment. Jones also claims he was deprived of certain constitutional rights by the state court. This Court cleared the runway for Jones to appeal the Connecticut judgment, including the amount of punitive damages, and nothing in this bankruptcy case affects that appellate right. He may raise complaints about not being permitted the right to argue certain defenses at the damages trial or his constitutional arguments with the appropriate state appellate forum. It is not, however, a basis for this Court to ignore the plain language of the state court's default judgment or the damages awards. A right to appeal the state court's decision aside, the fully and fairly litigated and actually decided prongs are satisfied. *See, e.g.*, *Sims*, 479 B.R. at 421 (citing *Prager v. El Paso Nat. Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969)); *In re Dahlin*, No. 16-36169, 2018 WL 2670501, at *4 (Bankr. S.D. Tex. May 16, 2018) (finding that, under full faith and credit, defendant could not argue against nondischargeability because death penalty sanctions were improperly ordered). The Court rejects Jones's argument that it does not have to give full faith and credit to the state court default judgment order or the resulting damages awards.

---

[39] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 377, 3 at ¶ 457, ECF Nos. 57-4, 57-6.

[40] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 337, 3 at ¶ 417, ECF Nos. 57-4, 57-6.

[41] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 365, 3 at ¶ 445, ECF Nos. 57-4, 57-6.

[42] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Exs. 1 at ¶ 14, 3 at ¶ 433, ECF Nos. 57-4, 57-6.

This Court also agrees with the reasoning in cases like *Herbstein v. Bretman*, 266 B.R. 676, 685 (N.D. Ill. 2001), which held:

> [W]here [a litigant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, [then] we agree with the Bankruptcy Court . . . that [the litigant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [another court] due solely to [the litigant's] decisions. [The litigant] is not entitled to a second bite at the apple. The issue underlying the ... default judgment were "actually litigated" for purposes of the collateral estoppel doctrine.

### B. The issues were necessary to the judgment, including the jury award of damages

The findings about Jones's willful and malicious injury to the Plaintiffs' were also necessary to the judgment and the jury award of damages.

A defamatory statement is "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Hopkins v. O'Connor,* 925 A.2d 1030, 1042 (Conn. 2007). To establish a prima facie case of defamation in Connecticut, the plaintiff must show that the defendant published a defamatory statement, which identified the plaintiff to a third person, and that the plaintiff's reputation suffered because of the statement. *Cweklinsky v. Mobil Chem. Co.*, 837 A.2d 759, 763–64 (Conn. 2004).

As noted earlier, the jury was instructed, among other things, that "the defendants defamed the plaintiffs by accusing them of faking their children's death, being crisis actors, and fraudulently misrepresenting themselves to the public at large."[43] The jury was also instructed that the Jones defendants proximately harmed the Plaintiffs by spreading lies about them to their audience and the public by urging people to investigate the Plaintiffs about the alleged "Sandy Hook hoax."[44]

To establish intentional infliction of emotional distress under Connecticut law, a plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the

---

[43] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 14, ECF No. 57-21.

[44] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 15, ECF No. 57-21.

emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.,* 757 A.2d 1059, 1062 (Conn. 2000) (internal quotation marks omitted) (quoting *Petyan v. Ellis*, 510 A.2d 1337, 1342 (Conn. 1986)).

The jury was instructed, among other things, that the defendants were liable for intentional infliction of emotional distress:

> These four elements thus have been established. One, the defendants intended to inflict emotional distress or the defendants knew or should have known that emotional distress was the likely result of their conduct. Two, that the conduct was extreme and outrageous. Three, that the conduct was the cause of emotional distress experienced by the plaintiff; and four, that the emotional distress sustained by the plaintiff was severe.

Thus, there are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims. These are findings about a deliberate and intentional act meant to cause injury, not just a deliberate act that leads to injury. The jury considered damages in a multi-day trial and awarded damages based on these findings.

Nothing in the jury instruction for defamation or intentional infliction of emotional distress contemplates that a lesser standard of intent should apply to Jones's knowledge of the injury. Therefore, the damages for defamation and intentional infliction of emotional distress were necessarily awarded based on the finding that Jones intended to harm the Plaintiffs. On compensatory damages, the jury charge contains specific findings premised on the default judgment—not a broad general charge lacking in detail. This Court focuses on what the jury charge actually says, and not what it *could* say or *could* imply.

This case is like the bankruptcy court decision in *In re Scarbrough*. In *Scarbrough*, state court findings about a debtor's actions supported a finding that the debtor acted with a subjective motive to cause harm, so the debt was nondischargeable under § 523(a)(6). *Scarbrough*, 516 B.R. at 912. The state court findings included, for example, that the debtor damaged another's reputation and failed to turn over evidence for the express purpose of causing that party harm so the debtor could win his case. *Id.* at 905. The defamation jury instruction was that the debtor made statements he "knew were false or which he made with a high degree of awareness that were probably false, to an extent that he in fact had serious doubts as to the truth of the statement(s)." *Id.* at 912. That instruction mirrors the defamation instruction in this case.

14 / 18

The Fifth Circuit Court of Appeals later affirmed the bankruptcy court's holding. *Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447, 456 (5th Cir. 2016). The Fifth Circuit held that the jury's finding of damages for defamation independently supported the judgment, was binding, and precluded relitigating that issue in another case. *Id.* Therefore, in Jones's case, the language of the jury instruction confirms that the damages awarded flow from the allegation of intent to harm the Plaintiffs—not allegations of recklessness. *See Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998), *as amended on reh'g* (Nov. 3, 1998) (finding that the factual allegations on which liability was based in a state court proceeding showed that the defendant acted with intent to cause injury). Summary judgment on the nondischargeability of the jury awards for compensatory damages is granted.[45]

## III.    Summary Judgment is Granted on CUTPA Punitive Damages

For the reasons explained above, the issue of willful and malicious injury was also fully and fairly (and finally) litigated in relation to the CUTPA punitive damages award. Jones had the opportunity to participate in the state court litigation, and he did so. He also submitted argument about CUTPA punitive damages.

The findings on willful and maliciousness were also necessary to the judgment. These findings were actually litigated and determined. There is no question that the issues to be estopped are identical. The state court issued a 45-page opinion on the CUTPA and common law punitive damages.[46] The court determined that the material allegations in the Plaintiffs' complaints, "which have been established by virtue of the defaults" entitled them to an award of CUTPA punitive damages. On CUTPA punitive damages, the court stated it assessed factors such as (i) the degree of the defendants' relative blameworthiness— whether it was reckless, intentional, or malicious; (ii) whether the defendant's action was taken or omitted to augment profit; (iii) whether the wrongdoing was hard to detect; (iv) whether the injury and compensatory damages were small, providing a low incentive to bring the action; and (v) whether the award will deter the defendant and others from similar conduct.[47]

The court considered the degree of blameworthiness the most important consideration and found that Jones's actions were intentional and malicious, and

---

[45] The ultimate amount of this nondischargeable debt could change if Jones succeeds on his state court appeal.

[46] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 39, ECF No. 58-2.

[47] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 29–30, ECF No. 58-2 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 418 (2003)).

awarded punitive damages based on these findings.[48] The state court did not base any of the CUTPA punitive damages on recklessness:

> The record clearly supports the plaintiffs' argument that *the defendants' conduct was intentional and malicious, and certain to cause harm* by virtue of their infrastructure, ability to spread content, and massive audience including the "infowarriors." . . . This depravity, and cruel, persistent course of conduct by the defendants establishes *the highest degree of reprehensibility and blameworthiness*. . . Having considered the factors in light of the record before the court, the court awards the sum of $10 million in CUTPA punitive damages to each of the fifteen plaintiffs.[49]

These are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims. They are not, as Jones argues, superfluous findings about intent related to the Plaintiffs' harm. It is irrelevant that the state court could have awarded damages on reckless acts. What is important is what the court actually did. Here there are findings about a deliberate and intentional act meant to cause injury, not just a deliberate act that leads to injury. The state court also considered the additional factors listed above, but the focus remained on willful and intentional acts, and not on a lesser standard like recklessness.

In sum, the state court made specific findings that went directly to the amount of punitive damages. They were necessary to the judgment. So summary judgment is granted on the debt for CUTPA punitive damages.

## IV.    Summary Judgment is Denied on Common-law Punitive Damages

In Connecticut, common-law punitive damages are limited to the expense of litigation (attorneys' fees and costs) less taxable costs. *See, e.g.*, *Bifolck v. Philip Morris, Inc.*, 152 A.3d 1183, 1213 (Conn. 2016). The jury charge instructed that common-law punitive damages could be awarded if the defendants' actions were willful, wanton, or malicious.[50] A willful and malicious harm is based on an intent without just cause or excuse.[51] And "the intentional injury aspect may be satisfied if

---

[48] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 43, ECF No. 58-2.

[49] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 22 at 44–45, ECF No. 58-2.

[50] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[51] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

the resultant harm was the direct and natural consequence of the intended act."[52] But wanton misconduct is defined as "reckless misconduct."[53]

There are bankruptcy cases holding that punitive damages should be found nondischargeable based on findings of willful and malicious injury when the compensatory damages and punitive damages flow from the same conduct. *See, e.g.*, *Macris v. Saxton (In re Saxton)*, No. 10-44412, 2011 WL 2293320, at *8 (Bankr. N.D. Tex. June 8, 2011). In *Gober*, the Fifth Circuit held that "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208.

It is logical to presume that the findings of willful and malicious injuries based on defamation and intentional infliction of emotional distress were necessary to the award of common-law punitive damages. But unlike the instructions for defamation and intentional infliction of emotional distress, the jury had a right to award common-law punitive damages based on reckless actions *or* actual intent to cause harm. This proves fatal on summary judgment.

Under Fifth Circuit law, recklessness does not meet the standard for willful and malicious injury under § 523(a)(6). *Miller*, 156 F.3d at 603. And there must be intent to cause the injury, not just an act which leads to the injury. *Kawaauhau*, 523 U.S. at 61–62. The record is not expressly clear on whether the damages were solely based on willfulness and maliciousness. Thus, summary judgment is denied on the debt for common-law punitive damages.

## V. Summary Judgment does not Violate Policy or Jones's Constitutional Rights

Finally, Jones argues that the Court should not grant summary judgment because the state court judgment was entered in anticipation of this bankruptcy proceeding. But there is no evidence of manipulation that even remotely warrants serious consideration of this argument based on the record before the Court. This ancillary argument, and related arguments by Jones about his disagreements with the state court default judgment order and damages awards do not change the

---

[52] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

[53] Decl. of Alinor C. Sterling in Supp. of Pls.' Mot. for Summ. J. Ex. 18 at 24, ECF No. 57-21.

outcome.[54] Again, he can make such argument to the appropriate state appellate court.

## Conclusion

For the reasons stated above:

1. Summary judgment is granted on the $965 million debt for compensatory damages awarded in the Connecticut Action for defamation and intentional infliction of emotional distress.

2. Summary judgment is granted on the $150 million debt for CUTPA punitive damages.

3. Summary judgment is denied on the $321.65 million in attorneys' fees and $1,489,555.94 in costs awarded as common law punitive damages.

4. All other objections raised by Jones not specifically addressed above are denied.

Signed:  October 19, 2023

Christopher Lopez
United States Bankruptcy Judge

---

[54] Jones also makes several arguments best described as grounds for appeal which this Court declines to address (for example, Jones argues that the CUTPA award was improper based on the allegations in the complaints). Def.'s Resp. to Mot. for Summ. J. at 43, ECF No. 61. These arguments are rejected.