# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>ALEXANDER E. JONES<br><br>Debtor.<br><br>---<br>DAVID WHEELER, FRANCINE WHEELER, JACQUELINE BARDEN, MARK BARDEN, NICOLE HOCKLEY, IAN HOCKLEY, JENNIFER HENSEL, DONNA SOTO, CARLEE SOTO-PARISI, CARLOS M. SOTO, JILLIAN SOTO MARINO, WILLIAM ALDENBERG, WILLIAM SHERLACH, ROBERT PARKER, AND RICHARD M. COAN, as chapter 7 trustee for the estate of ERICA LAFFERTY,<br><br>Appellees,<br><br>v.<br><br>ALEXANDER E. JONES<br><br>Appellant. | Civil Action No. 4:23-cv-4240<br><br>(Appeal in Bankr. Case No. 22-33553 (CML) and Adv. Pro. No. 23-3037 (CML)) |

**DEFENDANT ALEX JONES'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL**

On November 2, 2023, Debtor Alexander E. Jones ("Debtor") filed a motion for leave to appeal an interlocutory order (the "Motion") entered by the U.S. Bankruptcy Court for the

1

Southern District of Texas. (Doc. 2).[1] On November 16, 2023, Plaintiffs filed their response in opposition to the Motion (the "Response"). (Doc. 10). In that Response, Plaintiffs also included a cross-motion for leave to file their own interlocutory appeal. Debtor now files his Reply and states as follows:

## I. There is a Controlling Question of Law

1. The issue here is purely legal: did the Bankruptcy Court properly apply collateral estoppel under Connecticut law? Plaintiffs do not dispute that the issue is purely legal. Indeed, Plaintiffs argued to the Bankruptcy Court, trying to prevent Debtor from conducting any discovery, that "[t]here [wa]s no need for fact discovery[] since the questions presented by the Adversary Complaints [were] **purely legal in nature**." Adv. Doc. 16 at 7 (emphasis added).

2. Instead, Plaintiffs argue that the record is too big for the Court to review. They posit that the "bankruptcy Court did not apply collateral estoppel principles in some hypothetical or abstract sense, but instead applied those principles to specific record evidence." Doc. 10 at 8. But no court applies collateral estoppel abstractly. There is necessarily a record from another court involved in every collateral estoppel case. Despite this, courts routinely review orders based on offensive collateral estoppel in interlocutory appeals. *Bradburn Parent Tchr. Store, Inc. v. 3M*, No. CIV.A.02-7676, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005) ("There can be little doubt that the Court's June 9, 2005 Order applying offensive collateral estoppel to certain facts established in *LePage's* was a ruling on an issue of law."); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp.

---

[1] In his Motion, Debtor instructed the Court that all his docket citations referred to the Adversary Proceeding No. 23-3037 unless otherwise specified. This was before Debtor's Motion was assigned to the District Court. Now that Debtor's appeal has been assigned a new civil case number, all docket references in this Reply will refer to the docket in the case now before Judge Eskridge, i.e., 23-cv-4240. All docket references in this Reply discussing the underlying Adversary Proceeding No. 23-3037 will be referred to as "Adv. Doc." References to "Bankruptcy Doc." refer to Debtor's Chapter 11 Case No. 22-33553. And references to "Tex. Adv. Doc." refers to Debtor's other adversary proceeding Case No. 23-3035.

2d 741, 742 (D. Md. 2003) (certifying court's order applying collateral estoppel to preclude relitigation of certain issues in antitrust action for interlocutory appeal).

3. Plaintiffs are also wrong about how much state-court record this Court must review. True, Plaintiffs' MSJ had 84 exhibits totaling thousands of pages. But the Bankruptcy Court's analysis focused on just three documents: (1) the state-court complaint; (2) the state-court jury instructions; and (3) the Punitive Damages Order. These three documents will also be the focus here on review in determining whether collateral estoppel precludes Debtor from litigating willful and malicious injury under § 523(a)(6).

## II. There are Substantial Grounds for Difference of Opinion

### A. Necessarily Determined

4. Plaintiffs argue that Debtor "completely ignores" that the Bankruptcy Court held that the allegations in Plaintiffs' Connecticut complaint also necessarily decided the § 523(a)(6) issue. But that is incorrect. While the Bankruptcy Court relied on the allegations from the Connecticut complaint in its discussion of the "actually litigated" prong, *see* Adv. Doc. 76 at 10-11, the Bankruptcy Court did not circle back to the state-court allegations in the "necessarily determined" section of its Order. *See id.* at 13-17. It is thus hard to conclude that the Bankruptcy Court relied on the state-court allegations in its analysis of the "necessarily determined" prong, especially considering the Bankruptcy Court expressly noted that it was relying on the state-court allegations in the parallel "necessarily determined" section of the Texas Order. *See* Texas Adv. Doc. 46 at 14-15.

5. Even if the Bankruptcy Court relied on the deemed admitted allegations from the state-court complaint, it shouldn't have. Under Connecticut law, "an entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint

3

which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all the facts pleaded." *Gaynor v. Hi-Tech Homes*, 89 A.3d 373, 378 (Conn. App. 2014). Thus, because Plaintiffs did not allege a cause of action in the state-court case that required a level of culpability higher than recklessness, Debtor could not have admitted to any such conduct by defaulting. You see this principle at play in *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996), and *In re Pancake*, 106 F.3d 1242 (5th Cir 1997).

6. In *Gober*, the Fifth Circuit affirmed application of collateral estoppel to a state-court judgment based on a discovery default. *Id.* at 1206. But *Gober* did not rely on the allegations in the state-court petition to do so. The court instead noted that the plaintiff "was required to establish by a preponderance of the evidence that the degree and type of Gober's misconduct warranted punitive damages." *Id.* at 1205. In particular, "[t]he state court specifically found, 'after hearing the evidence and arguments of counsel,' that [the defendant] acted 'maliciously and willfully when he converted [$307,284.96], for which exemplary and punitive damages should be awarded.'" *Id.* (quoting state-court transcript). Thus, *Gober* relied on specific findings from the state court based on damages hearing evidence, not on the allegations in the underlying state-court petitions.

7. In *Pancake*, the Fifth Circuit affirmed the district court's refusal to apply collateral estoppel to a discovery default because the plaintiff could not produce record evidence that the state court conducted a hearing where the defendant was put to its evidentiary burden.[2] 106 F.3d at 1244. Importantly, the Appellant's Brief in *Pancake* noted that the plaintiff attached his state-court petition to his summary judgment motion. Appellant's Brief at 6, *Matter of Pancake*, 106 F.3d 1242 (5th Cir. 1997) (No. 96-10798), 1996 WL 33455395, at 6. Thus, the *Pancake* court had

---

[2] Debtor has included a more in-depth discussion of *Pancake* in his motion to file interlocutory appeal in 23-cv-4238. Tx. D.C. Doc. 2 at 18-19.

the plaintiff's state-court petition in front of it yet did not accept the plaintiff's pleadings as true for collateral estoppel purposes. Nine years later, the Fifth Circuit in *In re Harrison*, 180 F. App'x 485, 488 (5th Cir. 2006), noted that "*Pancake* stands for the proposition that a reviewing court is required to fully investigate a record and to determine if a default judgment should have preclusive effect." And it celebrated the bankruptcy court for taking a "hard look at the facts in this case show[ing] that the issues were fully and fairly litigated." *Id.*

8. Plaintiffs also argue that the disjunctive jury instructions are no problem in this case because the jury was instructed on defamation per se. Doc. 10 at 14. But Plaintiffs misunderstand defamation per se. Defamation per se is a special category for defamatory words where the "law conclusively presumes the existence of injury to the plaintiff's reputation." *Gambardella v. Apple Health Care, Inc.*, 863 A.2d 735, 741 (Conn. App. 2005). Defamation that charges a crime is considered defamation per se under Connecticut law. Upon such a statement, the plaintiff won't be required to prove specific damages. *Id.* at 851-52. But defamation per se has nothing to do with proof regarding the defendant's level of culpability. Indeed, one can commit defamation per se in Connecticut with scienter of mere negligence. *Miles v. Perry*, 529 A.2d 199, 203 (Conn. App. 1987) (affirming verdict of general damages for defamation per se where defendant proved that the defendants acted only negligently).

9. Next, Plaintiffs try to distinguish the inconsistencies between the Bankruptcy Court's Connecticut Order and its Texas Order on IIED. The Bankruptcy Court held in the Texas Order that collateral estoppel did not apply to the IIED damages because the "jury was asked to find damages based on intentional *or* reckless acts," Tex. Adv. Doc. 46 at 15, but it did not do so in the Connecticut Order despite a similar jury instruction on IIED. *See* Adv. Doc. 76 (quoting jury instruction and noting that Debtor could have been found liable for IIED if he "intended to inflict

emotional distress or [if he] knew or should have known that emotional distress was the likely result of his conduct" (quoting Adv. Doc. 57-21)).

10. Plaintiffs argue that this was because "[t]he Texas state court charged the jury with determining the amount of damages 'proximately caused' by Jones's actions and did not instruct that jury that [the] law presumed injury." Doc. 10 at 15 (citing Tex. Adv. Doc. 29-5, 29-6). It's hard to decipher what this means or why it matters. The relevant issue is the level of culpability, not the presumption of injury. The presumption of injury that Plaintiffs refer to is from the jury instruction on defamation, not IIED. This cannot be a satisfactory explanation for why the Bankruptcy Court's two orders seemingly contradict themselves on the application of collateral estoppel to the IIED jury instructions.

11. Plaintiffs finish their section on the "necessarily determined" prong by taking more cheap shots at Debtor for making "numerous other misstatements about the law." Doc. 10 at 15. So many, in fact, that they were simply "too extensive to discuss." *Id*. This requires no response.

12. As to Plaintiffs' "one example" of misstatement, Plaintiffs take exception to Debtor's argument that the "Fifth Circuit has not opined" on whether a disjunctive jury instruction necessarily decides the issue of "willful and malicious injury" under § 523(a)(6). Plaintiffs argue there are two Fifth Circuit cases that have done so: *Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447, 456 (5th Cir. 2016), and *Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998), *as amended on reh'g* (Nov. 3, 1998).

13. As to *Scarbrough*, Debtor's Motion already explained why the Fifth Circuit's affirmance in *Scarbrough*, and, for that matter, the bankruptcy court's decision in the underlying *Scarbrough* adversary case, are not applicable here. *See* Doc. 2 at 13-15. To be clear, when Debtor says that the Court can simply reject *Scarbrough's* holding to the extent that *Scarbrough*

6

contradicts Debtor's argument, the reference is to the Western District of Texas's Bankruptcy Court's decision in *Scarbrough— Purser v. Scarbrough (In re Scarbrough)*, 516 B.R. 897, 912-13 (Bankr. W.D. Tex. 2014)—not the Fifth Circuit's decision in *Scarbrough*.

14. As for *Caton*, it has nothing to do with a disjunctive jury instruction, and it rests solely on the application of Illinois law. 157 F.3d at 1030 ("No additional record support is required under Illinois law.").

### III. Plaintiffs Missed Their Jurisdictional Deadline to File a Notice of Cross-Appeal

15. Plaintiffs ask this Court, in the alternative, to grant them leave to cross-appeal if it allows Debtor to appeal. However, Plaintiffs did not comply with Fed. R. Bankr. P. 8002(a)(1). Rule 8002(a)(1) allows a party 14 days after the entry of an order to file their notice of appeal. Further, Rule 8002(a)(3) states that "[i]f one party files a timely notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed. . . ." Here, Plaintiffs did not file a notice of appeal, and their additional fourteen days has run. Importantly, this "time limit is jurisdiction and cannot be waived." *Matter of Topco, Inc.*, 894 F.2d 727, 734 (5th Cir. 1990). Moreover, if the Court allows Plaintiffs' response brief to serve as a notice of appeal, Plaintiffs still "must satisfy the notice of appeal requirements." *Marshall v. Gurley*, No. 4:17-CV-405, 2018 WL 4762858, at *3 (E.D. Tex. Sept. 30, 2018).

Dated: December 4, 2023.

                                         Respectfully submitted,

**CROWE & DUNLEVY, P.C.**

*/s/ Vickie L. Driver*
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
2525 McKinnon Avenue, Suite 425
Dallas, TX 75201
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

-AND-

J. Christopher Davis
Oklahoma Bar #16629 (*pro hac vice* forthcoming)
Deric J. McClellan
Oklahoma Bar # 32827 (*pro hac vice* forthcoming)
222 N. Detroit Ave., Suite 600
Tulsa, Oklahoma 74120
Telephone: 737- 218-6187
dallaseservice@crowedunlevy.com

**COUNSEL FOR DEFENDANT-APPELLANT ALEXANDER E. JONES**

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on December 4, 2023.

                                          */s/ Vickie L. Driver*
                                          Vickie L. Driver

**CERTIFICATE OF WORD COUNT**

      This document complies with the word limitation set forth in the Court Procedures of the Hon. Charles R. Eskridge III because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 1994 words.

                                          */s/ Vickie L. Driver*
                                          Vickie L. Driver